Declaration of Nick Pladson

EXHIBIT C

The Office of
Minnesota Attorney General Keith Ellison
helping people afford their lives and live with dignity, safety, and respect • www.ag.state.mn.us

August 28, 2025

Liza Zamd
Senior Trial Attorney
Employment Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington DC 20530

**Re: Investigation of the Employment Practices of the State of Minnesota Pursuant to Section 707 of Title VII of the Civil Rights Act of 1964, as Amended.**
DOJ Investigation No. DJ 170-39-85

Dear Senior Trial Attorney Zamd:

The State of Minnesota (Minnesota) acknowledges the Department of Justice's (DOJ) July 10, 2025 notice opening a pattern-or-practice investigation under Title VII into Minnesota's employment practices. This letter seeks clarification regarding the requests for information that the DOJ sent, provides initial responses to those requests, and opens a dialogue about the next steps in the investigation.

The investigation appears to be focused on the Minnesota Department of Human Services' (DHS) hiring justification policy. Minnesota disagrees with DOJ's characterization of DHS's policy in its notice of investigation because it lacks critical statutory and regulatory context. Properly situated within Minnesota's affirmative action (AA) framework, a "hiring justification" or preemployment review procedure is required for certain positions and functions as a documentation and quality-control step in the hiring process. The procedure permits real-time review of a hiring process to prevent violation of merit selection principles or other biased decision-making. It is not a mechanism to reverse individual outcomes or impose quotas on the basis of protected group membership. Within that context and Minnesota's broader merit-system safeguards, including uniform application, job-related selection procedures, and plan duration limits; hiring justification policies are prudent tools to prevent discrimination, not perpetuate it.

We met with you on July 25, 2025, to discuss the investigation. As we noted at that meeting, Minnesota is open to cooperating with any good-faith investigation into Minnesota's

employment practices, although state-law limits the type of information that we can provide. Since our meeting, Minnesota received the DOJ's July 29, 2025 Requests for Information (RFI).[1]

We want to ensure that our responses are as clear and useful as possible. The DOJ's July 10 Notice of Investigation identifies DHS's *Hiring Justification* Policy as the basis for this inquiry.[2] That policy was published on June 17, 2025, issued to DHS personnel on July 1, and became effective on August 12, 2025.[3] The July 29 RFI, however, appears to draw much of its language and citations from DHS's prior *Affirmative Action Implementation* Policy, adopted in 2002, last amended in 2014, and superseded earlier this summer.[4] While the two policies are substantively similar in many respects, they are not identical and several of the citations in the RFI do not correspond to provisions in the current policy. Moreover, this discrepancy creates practical difficulties in responding to the RFI. The Notice purports to investigate one policy, while the RFI directs questions to another—sometimes citing specific provisions and pagination that no longer exist.

We recognize that this may reflect a simple drafting overlap, but it has created some uncertainty about which policy DOJ intends as the focus of its inquiry. Minnesota will provide information responsive to both where feasible, but to avoid confusion going forward, we respectfully request confirmation of which policy the DOJ is investigating. To ensure clarity, Minnesota requests that the DOJ confirm which policy is at issue and adjust its requests accordingly. Until then, Minnesota will endeavor to respond in good faith, but reserves the right to object where the requests rely on superseded or inapplicable policy language.

Pending this important clarification, Minnesota submits this response in partial fulfillment of the RFI, and answers DOJ's questions when it can. Minnesota intends to produce more documents on a rolling basis over the coming weeks. As explained further below, Minnesota cannot legally fulfill some of the DOJ's requests. There are also some requests that would benefit from additional clarification to facilitate our response. To this end, we would like to find a mutually agreeable date and time to meet and confer with the DOJ to address these matters.

---

[1] *See Request for Information*, U.S. Dep't of Justice, Civil Rights Div., Emp. Litig. Sec., DJ 170-39-85 (July 29, 2025).

[2] *See Notice of Investigation*, U.S. Dep't of Justice, Civil Rights Div., Emp. Litig. Sec., DJ-170-39-85 (July 10, 2025) ("Specifically, we have reason to believe the Minnesota Department of Human Services is engaging in unlawful action through, among other things, the adoption and forthcoming implementation of its 'hiring justification' policy.").

[3] Minn. Dep't of Human Servs., Admin. Policy 4100.250, *Hiring Justification* (issued July 1, 2025; effective August 12, 2025).

[4] Minn. Dep't of Human Servs., Admin. Policy 4100.005, *Affirmative Action Implementation* (last revised May 6, 2014); *see* DOJ RFI, at Request 17; *see also* DOJ RFI, at Requests 6, 7, 18, 21-26.

2

### I.  Initial Response to the DOJ's Request for Information.

**INSTRUCTIONS, OBJECTIONS, AND LIMITATIONS**

The State of Minnesota ("Minnesota") responds to the Department of Justice's ("DOJ") July 29, 2025 Requests for Information ("RFI") subject to and without waiving the following general objections, which are incorporated into each individual response:

1. **Privilege and Protections.** Minnesota objects to the RFI to the extent that it seeks information protected by the attorney–client privilege, the attorney work-product doctrine, the common interest privilege, the deliberative process privilege, the government operations privilege, or any other applicable privilege or protection. No such privilege or protection is waived by this response, and Minnesota will produce only non-privileged information.

2. **Voluntary Cooperation.** Minnesota provides this information voluntarily and expressly reserves all legal objections to DOJ's authority to demand production of certain categories of information.

3. **Confidentiality.** Minnesota objects to the RFI to the extent that it seeks information designated as private or confidential under the Minnesota Government Data Practices Act ("MGDPA"), Minn. Stat. ch. 13, or other applicable law. Minnesota cannot lawfully disclose private or confidential data absent court order or express statutory authorization. Requests that seek such information "without redactions" are inconsistent with the MGDPA and will be addressed only in accordance with state law.

4. **Overbreadth and Burden.** Minnesota objects to the RFI as overly broad and unduly burdensome to the extent that it seeks information outside the scope of the DOJ's stated inquiry, including information relating to non-cabinet agencies, former employees, or matters and policies beyond the scope outlined in the DOJ's July 10, 2025 Notice of Investigation.

5. **Temporal Scope.** Minnesota objects to the extent that the RFI seeks information outside the timeframe of January 1, 2023 to present.

6. **Agency Scope.** Minnesota objects to the DOJ's RFI to the extent it seeks information from its agencies or instrumentalities other than the cabinet-level agencies identified in Minnesota Statutes section 15.01. Included within the scope are the following Minnesota agencies: Department of Administration; Department of Agriculture; Department of Children, Youth, and Families; Department of Commerce; Department of Corrections; Department of Education; Department of Employment and Economic Development; Department of Health; Department of Human Rights; Department of Human Services; Department of Information Technology Services; Department of Iron Range Resources and Rehabilitation; Department of Labor and Industry; Department of Management and Budget; Department of Military Affairs; Department of Natural Resources; Department of Public Safety; Department of Revenue; Department of Transportation; and Department of Veterans Affairs.

7. **Reservation of Rights.** Minnesota reserves the right to supplement, amend, or revise these responses as appropriate, and no omission should be construed as a concession that additional information does not exist or will not be provided.

### A. Responses to the DOJ's Requests For Information.

### REQUESTS

1. **Identify by name and effective date, all statutes and regulations the State must comply with when implementing any affirmative action program and provide their legal citation.**

**Response:** Minnesota complies with Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the Minnesota Human Rights Act, Minn. Stat. ch. 363A, and Minnesota Statutes §§ 43A.19 and 43A.191, together with implementing rules such as Minn. R. 3905.0100–3905.0600. Minnesota also applies applicable federal and state rules tied to agency-specific regulations, funding sources, and contracts when required.

2. **Identify what actions, if any, the State took to comply with 29 C.F.R. § 1608 and provide all documentation, such as emails, reports, etc., referencing 29 C.F.R. § 1608.**

**Response:** 29 C.F.R. Part 1608 contains EEOC interpretive guidelines explaining when voluntary affirmative action will be deemed consistent with Title VII; it is not a mandatory compliance regime. Minnesota has not adopted a separate "Part 1608 program," but its agency-level affirmative-action plans required by Minn. Stat. §§ 43A.19 and 43A.191 are structured around 1608's framework—(i) self-analysis (e.g., workforce availability/utilization and barrier analyses), (ii) a reasonable basis for any goals, and (iii) reasonable, temporary, programmatic measures (e.g., targeted outreach/recruitment, barrier removal, training, periodic reporting, and plan updates—all prospective and consistent with Title VII).

3. **Describe the State's basis for determining whether it previously discriminated against individuals based on their race, ethnicity, or sex, and describe the process it used to make that determination.**

**Response**: Minnesota's affirmative action plans are required by Minn. Stat. §§ 43A.19 and 43A.191, and their implementing rules. These plans are prospective and analysis-driven, designed to remedy manifest underutilization of qualified protected group members identified in specific job classifications. It is also possible for agencies to adopt their own agency-specific policies and procedures in addition to those established by MMB. When any agency identifies or investigates individual allegations of discrimination, such matters are addressed through established HR/LR policies prohibiting harassment and discrimination (e.g., HR/LR Policies #1436 and #1329).

4. **In an Excel spreadsheet, identify all individuals involved with making the determination referenced in Request No. 3, by:**
   a. **last name,**
   b. **first name,**
   c. **position title,**
   d. **role,**
   e. **hire date,**
   f. **termination date (if any), and**

    g.  subagency.

**Response:** Under Minnesota law, each agency implements affirmative action plans under state law. No single individual is designated to determine whether 'the State previously discriminated' against individuals based on their race, ethnicity, or sex.

5. **Produce all documentation, such as reports, studies, and memoranda, relating to the State's determination as to whether it previously discriminated against individuals based on their race, ethnicity, or sex.**

**Response**: Minnesota's agency-level affirmative action plans are statutory requirements, not findings of prior discrimination. To the extent that this request seeks data that is categorized as not public under the MGDPA, Minnesota cannot provide responsive information absent a court order or other statutory authorization.

6. **In an Excel spreadsheet, identify all State positions where there was an unmet affirmative action goal and the applicant pool included at least one qualified candidate from an underrepresented group, pursuant to the Policy, by:**
    a. **subagency,**
    b. **department,**
    c. **job title,**
    d. **salary/wage,**
    e. **hiring manager first name, and**
    f. **hiring manager last name.**

**Response:** As explained in Minnesota's response to RFI #17, DHS's *Affirmative Action Implementation Policy* referred to throughout this RFI is no longer in effect, the *Policy* only applied to DHS, and there was no statewide version of the *Policy*. Agency-level affirmative action plans identify affirmative action goals and whether the prior goals have been met. Minnesota will produce affirmative action plans for the relevant period for each cabinet-level state agency.

7. **In an Excel spreadsheet, identify all applicants who applied for State positions where there was an unmet affirmative action goal and the agency interviewed at least one candidate from the underrepresented protected group, pursuant to the Policy, by:**
    a. **first name,**
    b. **last name,**
    c. **phone number,**
    d. **email address,**
    e. **home address,**
    f. **application date,**
    g. **interview date (if applicable),**
    h. **applicant score(s) and rank (if applicable),**
    i. **hire date (if applicable),**
    j. **termination date (if applicable),**
    k. **race,**
    l. **ethnicity, and**
    m. **sex.**

5

**Response:** As explained in Minnesota's response to RFI #17, DHS's *Affirmative Action Implementation Policy* referred to throughout this RFI is no longer in effect, the *Policy* only applied to DHS, and there was no statewide version of the *Policy*. To the extent that this request seeks data that is categorized as not public under the MGDPA, Minnesota cannot produce responsive information absent a court order or other statutory authorization.

8.  **Provide a detailed description of the selection process(es) for the positions identified in response to Request No.6, and if a scoring or ranking is used, the method and bases for scoring, ranking, and selecting candidates.**

**Response:** As explained in Minnesota's response to RFI #17, DHS's *Affirmative Action Implementation Policy* referred to throughout this RFI is no longer in effect, the *Policy* only applied to DHS, and there was no statewide version of the *Policy*. Minnesota will produce statewide hiring policies and MMB guidance materials related to interviewing and employee selection. Agency-specific policies from cabinet-level agencies will be produced on a rolling basis.

9.  **Produce all candidate applications relating to the positions or applicants identified in Request Nos. 6 and 7.**

**Response:** As explained in Minnesota's response to RFI #17, DHS's *Affirmative Action Implementation Policy* referred to throughout this RFI is no longer in effect, the *Policy* only applied to DHS, and there was no statewide version of the *Policy*. To the extent that this request seeks data that is categorized as not public under the MGDPA, Minnesota cannot produce responsive information absent a court order or other statutory authorization.

10. **Produce all written policies, manuals, personnel rules, codes, or other documents identifying or describing the selection process(es) for the positions identified in Request No. 6.**

**Response:** As explained in Minnesota's response to RFI #17, DHS's *Affirmative Action Implementation Policy* referred to throughout this RFI is no longer in effect, the *Policy* only applied to DHS, and there was no statewide version of the *Policy*. Minnesota will provide statewide hiring policies and MMB guidance materials relating to selection processes. Agency-specific policies from cabinet-level agencies may be produced on a rolling basis.

11. **Provide all formal and informal complaints filed by individuals relating to the State's affirmative action policy, any responses to such complaints, and any documents reflecting chain of custody of such complaints or responses.**

**Response:** To the extent that this request seeks data that is categorized as not public under the MGDPA, Minnesota cannot produce responsive information absent a court order or other statutory authorization. To the extent that public data exists relating to complaints about the State's affirmative action policy, Minnesota will gather responsive documents for production.

12. **For each complaint identified in response to Request No. 11, provide the investigative file, including the disposition of the complaint, any action taken in response to the complaint, and all other documents concerning the investigation of the complaint (e.g., evidence, notes, emails, memos.)**

**Response:** To the extent that this request seeks data that is categorized as not public under the MGDPA, Minnesota cannot produce responsive information absent a court order or other statutory authorization. To the extent that public data exists relating to complaints about the State's affirmative action policy, Minnesota will gather responsive documents for production.

13. **For each complaint identified in response to Request No. 11, indicate which complaints were related to, or accompanied by, litigation before a federal court, state court, the Equal Employment Opportunity Commission, or any other administrative tribunal.**

**Response:** To the extent that this request seeks data that is categorized as not public under the MGDPA, Minnesota cannot produce responsive information absent a court order or other statutory authorization. To the extent that public data reflecting such complaints exist and resulted in publicly filed litigation in state or federal court, Minnesota will gather responsive documents for production.

14. **Produce the State's records retention policy for documents and data related to its affirmative action policies.**

**Response:** Minnesota's cabinet-level state agencies are required to retain copies of their current and prior AA plans. Minnesota's Statewide Human Resources Records Retention Schedule is publicly available at the following location: https://mn.gov/mmb-stat/policies/retention-hr.pdf

15. **Provide all training materials relating to the Department of Human Service's (DHS) affirmative action program and identify by Bates Number the DHS policies produced in response to Request No. 10.**

**Response:** As explained in Minnesota's response to RFI #17, DHS's *Affirmative Action Implementation Policy* referred to throughout this RFI is no longer in effect, the *Policy* only applied to DHS, and there was no statewide version of the *Policy*. To the extent that such materials exist, Minnesota will gather and produce responsive training materials and policies from the relevant period.

16. **Indicate whether DHS policies and training materials are consistent with other State agency affirmative action programs. To the extent the DHS policy or training materials differ from other programs, please explain the differences in detail and identify the agency(ies) with the different policies**.

**Response:** DHS policies and training materials apply only to DHS. Each agency maintains its own AA plan as required by state law. DHS does not maintain policies and training materials of other agencies and is not responsible for reviewing or comparing policies of other agencies.

17. **Define "affirmative action," "unclassified," and "unmet affirmative action goal" as used in the DHS Affirmative Action Implementation Policy (Policy) at 4.**

**Response:** As explained above on page 2, DHS administrative policy 4100.005, *Affirmative Action Implementation Policy* (effective May 6, 2014) was superseded by DHS administrative policy 4100.240, *Hiring Justification Policy*, which was prepared on June 17, 2025, issued to

7

DHS personnel on July 1, 2025, and became effective on August 12, 2025. Thus, the DHS *Affirmative Action Implementation Policy*, and all policies, memos, or other communications (verbal, written, or electronic) that are based on it are no longer in effect.

DHS's *Affirmative Action Implementation Policy* did not define any of these terms. That said, DHS, like all cabinet-level agencies, uses the following definitions for the following words:

> "Affirmative action" is defined according to Minnesota Statutes section 43A.19, subd. 1 and Minnesota Rules 3900.0400, subp.2 and 3905.

> "Unclassified" refers to positions in Minnesota's "unclassified service." Minn. Stat. § 43A.02, subd. 39. Positions in the "unclassified service" are found in Minnesota Statutes section 43A.08.

Additionally, "affirmative action goals" are defined in DHS's current *Hiring Justification Policy* as "proactive efforts rooted in various civil rights legislation with the goal of increasing diverse representation within the workforce of an organization." There is no specific definition of "unmet affirmative action goals."

**18.   Explain how DHS conducts targeted recruitment.** *See* **Policy at 3.**

**Response:** As explained in Minnesota's response to RFI #17, DHS's *Affirmative Action Implementation Policy* referred to throughout this RFI is no longer in effect, the Policy only applied to DHS, and there was no statewide version of the Policy.

The *Affirmative Action Implementation Policy* defined "targeted recruitment" as "affirmative outreach and applicant identification efforts to attract applications from qualified underrepresented protected group members; includes a specific plan of action, responsible parties and time frame." DHS's outreach focuses on developing partnerships with community organizations to broaden awareness of employment opportunities. The department participates in career fairs that reach a wide range of applicants, including events for veterans, individuals with disabilities, and communities of color. Examples include the semiannual People of Color Career Fair in St. Paul and Minneapolis (next scheduled for October 28, 2025) and the Joint Services Career Fair at Fort Snelling (held on July 31, 2025). To expand visibility, DHS distributes job information through newsletters and online platforms. The Career Connect Newsletter, for example, reaches more than 5,000 subscribers statewide. Recruitment materials are tailored to the applicant groups DHS seeks to reach. For instance, materials for Aging and Disabilities Services highlight elderly populations and people with disabilities. DHS's recruitment work is conducted broadly, aimed at widening applicant pools and ensuring DHS participates in recruiting spaces beyond standard job postings to in-person connection and outreach.

**19.   Explain how DHS calculates the "estimated availability in the relevant geographic area and labor force," and "the FTE representation of one or more protected groups"** *see* **Policy at 4, including the source(s) of labor force information, and identify all individuals who played a role in the calculation, by:**
   a. **last name,**
   b. **first name,**
   c. **position title,**

8

    d. **role,**
    e. **hire date,**
    f. **termination date (if any), and**
    g. **employer.**

**Response:** As explained in Minnesota's response to RFI #17, DHS's *Affirmative Action Implementation Policy* referred to throughout this RFI is no longer in effect, the *Policy* only applied to DHS, and there was no statewide version of the Policy. The data DHS relied on to conduct its underutilization analyses are detailed in DHS's AA plans. The role DHS plays in this process is largely administrative, and it relies on data and formulas provided by MMB.

20. **Produce all documentation, such as reports, demographic data, relating to Request No. 19.**

**Response:** To the extent that this request seeks data that is categorized as not public under the MGDPA, Minnesota cannot produce responsive information absent a court order or other statutory authorization. Minnesota will provide the forms MMB provides to cabinet-level agencies to complete these analyses. To the extent that the DOJ seeks additional information, we believe it would be helpful to discuss this request to further clarify the nature of the request.

21. **Produce a representative "Self-Identification Form," and a "Vacancy Filling Guide/Checklist" referenced in the Policy.**

**Response:** As explained in Minnesota's response to RFI #17, DHS's *Affirmative Action Implementation Policy* referred to throughout this RFI is no longer in effect, the *Policy* only applied to DHS, and there was no statewide version of the *Policy*. Minnesota will produce representative copies of these two documents.

22. **Identify the deputy commissioners and Equal Opportunity and Access Division (EOAD) employees who approved hiring decisions,** *see* **Policy at 1, by:**
    a. **first name,**
    b. **last name,**
    c. **hire date,**
    d. **termination date (if applicable), and**
    e. **position title.**

**Response:** As explained in Minnesota's response to RFI #17, DHS's *Affirmative Action Implementation Policy* referred to throughout this RFI is no longer in effect, the *Policy* only applied to DHS, and there was no statewide version of the Policy. To the extent that this request seeks data that is categorized as not public under the MGDPA, Minnesota cannot produce responsive information absent a court order or other statutory authorization. To the extent that the DOJ seeks additional information, we believe it would be helpful to discuss this request to further clarify the nature of the request.

23. **In an Excel spreadsheet, identify all exceptions to the DHS interview requirement,** *see* **Policy, Section I. Hiring Supervisor, at 2, by:**
    a. **subagency,**
    b. **department,**
    c. **job title,**

9

      d. **salary/wage,**
      e. **date of exception,**
      f. **basis for exception,**
      g. **candidate first name,**
      h. **candidate last name, and**
      i. **date of hire (if applicable).**

**Response:** As explained in Minnesota's response to RFI #17, DHS's *Affirmative Action Implementation Policy* referred to throughout this RFI is no longer in effect, the *Policy* only applied to DHS, and there was no statewide version of the *Policy*. To the extent that this request seeks data that is categorized as not public under the MGDPA, Minnesota cannot produce responsive information absent a court order or other statutory authorization.

When DHS's new *Hiring Justification Policy* was created, these exceptions were omitted because, as a practical matter, they had no force or effect when state law or the terms of a collective bargaining agreement controlled. Further, consistent with Minnesota Statutes section 43A.191, the *Hiring Justification Policy* exempts several unclassified positions and appointments including, but not limited to, transfers, demotions, noncompetitive promotions, and emergency appointments. Finally, hiring justifications are only required under the *Policy* for vacancies in job categories with previously observed underutilization.

24. **Produce all "Justification Forms," including attachments, submitted to the Equal Opportunity and Access Division.** *See* **Policy, Section I. Hiring Supervisor, at 2.**

**Response:** As explained in Minnesota's response to RFI #17, DHS's *Affirmative Action Implementation Policy* referred to throughout this RFI is no longer in effect, the *Policy* only applied to DHS, and there was no statewide version of the *Policy*. Minnesota cannot provide information responsive to this request because the completed forms, including attachments, are classified as not public data under the MGDPA, which cannot be disclosed absent a court order or statutory authorization. Minnesota will produce template "Justification Forms" used by DHS under its *Affirmative Action Implementation Policy*.

25. **In an Excel spreadsheet, identify all individuals who experienced any employment action, including suspension, demotion, duty change, lowered performance evaluation, or termination, for failing to comply with the Policy,** *see* **Policy at 1, by:**
      a. **first name,**
      b. **last name,**
      c. **hire date,**
      d. **termination date (if any),**
      e. **position title,**
      f. **type of employment action,**
      g. **subagency, and**
      h. **department.**

**Response:** As explained in Minnesota's response to RFI #17, DHS's *Affirmative Action Implementation Policy* referred to throughout this RFI is no longer in effect, the *Policy* only applied to DHS, and there was no statewide version of the *Policy*. To the extent that this request seeks data that is categorized as not public under the MGDPA, Minnesota cannot produce

10

responsive information absent a court order or other statutory authorization. Notwithstanding these objections, no individuals experienced any employment action, including suspension, demotion, duty change, lowered performance evaluation, or termination, for violating DHS's *Affirmative Action Implementation Policy*.

26. **In an Excel spreadsheet, identify all agencies that experienced a sanction due to a failure to comply with the Policy,** *see* **Policy at 1, by**
    a. **agency name,**
    b. **sanction implementation date(s), and**
    c. **sanction.**

**Response:** As explained in Minnesota's response to RFI #17, DHS's *Affirmative Action Implementation Policy* referred to throughout this RFI is no longer in effect, the *Policy* only applied to DHS, and there was no statewide version of the *Policy*. Notwithstanding these responses, no agencies experienced any sanction due to a failure to comply with DHS's *Affirmative Action Implementation Policy*.

27. **Provide all documents related to the determinations referenced in Request Nos. 25 and 26.**

**Response:** No responsive documents exist.

28. **Provide the complete personnel file for current or former Minnesota Pollution Control Agency employee, LaVon "Vonnie" Phillips.**

**Response:** Minnesota cannot respond to this request because it seeks data classified as not public under the MGDPA cannot be disclosed absent a court order or other statutory authorization. To the extent that any public data exists, Minnesota objects that this request exceeds the scope of this investigation, that individual is not employed by one of the cabinet-level state agencies defined in Minnesota Statutes section 15.01, and on those additional bases, declines to respond to this request.

29. **Produce all documentation relating or referring to complaints, reports, or investigations of Mr. Phillips.**

**Response:** Minnesota cannot respond to this request because it seeks data classified as not public under the MGDPA that cannot be disclosed absent a court order or other statutory authorization. To the extent that any public data exists, Minnesota objects that this exceeds the scope of this investigation, that individual is not employed by one of the cabinet-level state agencies defined in Minnesota Statutes section 15.01, and on those additional bases, declines to respond to this request.

30. **In an Excel spreadsheet, identify all positions for which Mr. Phillips has served on a hiring committee, by:**
    a. **position title,**
    b. **subagency,**
    c. **department,**
    d. **name of the individual hired,**
    e. **race of the individual hired,**
    f. **hire date, and**

11

    g. role Mr. Phillips played on the hiring committee.

**Response:** Minnesota cannot respond to this request because it seeks data classified as not public under the MGDPA, and cannot be disclosed absent a court order or other statutory authorization. To the extent that any public data exists, Minnesota objects that this request exceeds the scope of the investigation, that individual is not employed by one of the cabinet-level state agencies defined in Minnesota Statutes section 15.01, and on those additional bases, declines to respond to this request.

31.    In an Excel spreadsheet, identify all applicants who applied for the positions identified in response to Request No. 30 by:
    a. first name,
    b. last name,
    c. phone number,
    d. email address,
    e. home address,
    f. application date,
    g. interview date (if applicable),
    h. applicant score(s) and rank (if applicable),
    i. hire date (if applicable),
    j. termination date (if applicable),

**Response:** Minnesota cannot respond to this request because it seeks data classified as not public under the MGDPA, and cannot be disclosed absent a court order or other statutory authorization. To the extent that any public data exists, Minnesota objects that this request exceeds the scope of the investigation, that individual is not employed by one of the cabinet-level state agencies defined in Minnesota Statutes section 15.01, and on those additional bases, declines to respond to this request.

***

Once you have had a chance to review these responses and documents, please reach out to schedule a time to discuss our request for clarification and the best way to move forward.

    Sincerely,

    *s/Nick Pladson*

    NICK PLADSON
    Assistant Attorney General

    (651) 300-7083 (Voice)
    (651) 296-7438 (Fax)
    Nick.Pladson@ag.state.mn.us

    *Attorney for the State of Minnesota*