IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        *Plaintiff*,<br><br>v.<br><br>STATE OF MINNESOTA,<br><br>        *Defendant*. | No: 26-cv-273(PJS-RWG-DPM/SGE)<br><br>**<u>MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RULE 12(e) MOTION FOR A MORE DEFINITE STATEMENT</u>** |

## INTRODUCTION

On January 14, 2026, the Plaintiff United States of America filed a Complaint, providing "a short and plain statement" of facts showing that it is entitled to relief. Dkt. No. 1. The Complaint identified a web of Defendant State of Minnesota's statutes, rules, and policies that discriminate against employees and prospective employees based on race and sex. Despite the clarity of the Complaint, Minnesota has moved, under Fed. R. Civ. P. 12(e) for a more definite statement, averring that it cannot "meaningfully answer" the Complaint without additional information. Dkt. No. 18 at 2. The motion is long on rhetoric and innuendo, but short on merit. What Minnesota seeks is not a more definite statement of fact, but a more detailed legal argument. A Rule 12(e) motion is an inappropriate vehicle to do so. Because Minnesota is pursuing relief not contemplated by the Rule, the Court should deny its motion.

1

Given that Minnesota's motion is meritless, and that Section 707(b) requires this "case to be in every way expedited," the United States respectfully suggests that this motion be decided on written submissions and without oral argument.[1]

## LEGAL STANDARD

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Because of the liberal notice-pleading standard governing federal pleadings 'and the availability of extensive discovery, Rule 12(e) motions are disfavored.'" *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 901 (D. Minn. 2013) (quoting *Radisson Hotels Int'l, Inc. v. Westin Hotel Co.*, 931 F. Supp. 638, 644 (D. Minn. 1996)). "[R]ule 12(e) provides a remedy for unintelligible pleadings; it is not intended to correct a claimed lack of detail." *Radisson Hotels*, 931 F. Supp. at 644 (internal quotation marks omitted). "Any attempt to use a Rule 12(e) motion for a more definite statement to tie the pleader down to a particular legal theory of the case will be rejected as contrary to the philosophy of the federal rules, which does not require the claimant to settle upon a theory of [the] case at the pleading stage." 5C Wright & Miller's, Federal Practice & Procedure § 1377 (3d ed. Nov. 2025 Update) ("Wright & Miller").

---

[1] In accordance with the provisions of L. Civ. R. 7.1(b), the United States sought Minnesota's consent to cancel the hearing. Minnesota declined to consent. Nevertheless, the United States respectfully asks the Court to exercise its own authority under the same rule to proceed without a hearing. *See id.* For the same reason—so that this case may be in every way expedited—the United States respectfully asks that the motion be decided by the panel in the first instance. *See id.*

# ARGUMENT

**I.    The United States' Complaint Conforms to Rule 8(a).**

Minnesota's argument appears to be two-fold. *First*, it appears to claim that Section 707(b) cases require a heightened pleading standard because "Congress requires that such actions be 'in every way expedited.'" Dkt. No. 18 at 16 (quoting 42 U.S.C. § 2000e-6(b)). In support of this curious assertion Minnesota relies on a single out-of-circuit case which merely suggested that congressional purpose to expedite 707(b) cases "can best be served by supplementing the allegations of fact." *EEOC v. Cont'l Oil Co.*, 393 F. Supp. 167, 172 (D. Colo. 1975) (cited by Dkt. No. 18 at 16). But the fact that the congressional purpose *may* be advanced by a more detailed complaint imposes no obligation on the United States to go beyond the requirements of Rule 8(a). All the United States is required to do is to provide a "short and plain" statement of fact with allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a), (d)(1). So long as a complaint conforms to Rule 8(a) (and heightened pleading standards of Rule 9 are not implicated), a motion under Rule 12(e) must be denied. *See Hodgson v. Va. Baptist Hosp., Inc.*, 482 F.2d 821, 824 (4th Cir. 1973). As one district court explained, Rule 12(e) is intended "to strike at unintelligibility rather than want of detail." *Resolution Trust Corp. v. Dean*, 854 F. Supp. 626, 649 (D. Ariz. 1994). Thus, even assuming a more factually comprehensive complaint would expedite the matter at hand (a point which the United States does not concede), that fact alone does not entitle Minnesota to the relief it seeks. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all

3

averments of fraud or mistake. This Court, however, has declined to extend such exceptions to other contexts.").

## II. A Rule 12(e) Motion is Not the Appropriate Mechanism to Challenge the Complaint's Legal Sufficiency or to Limit Discovery.

### A. The United States need not allege specific instances of discrimination under Section 703(a)(2).

Minnesota simply misconstrues the requirements and prohibitions of Title VII. It argues that "Title VII targets 'discriminatory employment practices, not an abstract policy of discrimination.'" Dkt. No. 18 at 16 (quoting *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 877 (1984)). That argument is both incorrect as a matter of law, and irrelevant to the purposes of the Rule 12(e) motion.

As an initial matter, Section 703(a)(2) of Title VII prohibits not just consummated discriminatory actions but also acts that "*would* deprive or *tend to* deprive . . . or otherwise adversely affect" employees or putative employees. 42 U.S.C. § 2000e-2(a)(2) (emphasis added). As the Seventh Circuit explained, Section 703(a)(2) "makes it unlawful to segregate employees by race even if that action has only a *tendency* to deprive a person of employment opportunities," and therefore "the lack of an 'adverse employment action' [does not] defeat[] a suit under § 2000e-2(a)(2)." *EEOC v. AutoZone, Inc.*, 860 F.3d 564, 569 (7th Cir. 2017). The United States explicitly pleaded a violation of Section 703(a)(2), *see* Dkt. No. 1, ¶¶ 64-72, and thus need not allege specific instances of discrimination, because the United States can meet its burden merely by alleging the existence of an openly declared discriminatory policy. *See, e.g.*, *United States v. Bd. of Educ. for Sch. Dist. of Phila.*, 911 F.2d 882, 892 (3d Cir. 1990) ("Where the allegedly discriminatory policy is

4

openly declared—in this case it was, among other things, published in the Pennsylvania Code—then proof that the policy was actually being followed consistently is not necessary in order to obtain an injunction against subsequent implementation. In short, if the . . . [s]tatute in itself represents a policy in conflict with Title VII, then the district court erred in failing to enjoin the Commonwealth from enforcing that statute.") (internal citations omitted).

Though most pattern or practice cases address discriminatory acts, cases across multiple jurisdictions confirm this plain-text interpretation by similarly finding that discriminatory formal policies, including contract provisions, themselves violate Title VII. *See, e.g.*, *id.*; *EEOC v. Hickman Mills Consol. Sch. Dist. No. 1*, 99 F. Supp. 2d 1070, 1076 (W.D. Mo. 2000) (Age Discrimination in Employment Act case concluding that "[a] policy is facially discriminatory and constitutes direct evidence when the terms of the policy classify employees based upon their protected trait, without regard to the employer's motives for using the protected trait in such a manner . . . . Each benefit plan reduced the benefits available based solely upon the age of the employee. This is direct evidence of discrimination.").

Other jurisdictions agree. For example, in *EEOC v. Doherty Enterprises*, "[p]laintiff allege[d] that [an] arbitration agreement constitute[d] a pattern and practice of resistance to the full enjoyment of rights secured by Title VII." 126 F. Supp. 3d 1305, 1307 (S.D. Fla. 2015). The defendant "move[d] to dismiss on the . . . grounds . . . the Complaint fail[ed] to allege any unlawful discrimination or retaliation under Title VII." *Id.* The district court rejected that argument, reasoning that pattern or practice claims are not limited to

traditional unlawful employment practices like "discrimination and retaliation," because "the clear language in section 707(a) . . . prohibits *resistance* to the full enjoyment of *any* rights secured by Title VII." *Id.* at 1311 (emphases added).

Similarly, in *EEOC v. Catholic Healthcare West*, the "EEOC argue[d] that [the defendant] engaged in a pattern or practice of sex discrimination for at least as long as Policy # 76300.802 was in effect." 530 F. Supp. 2d 1096, 1101 (C.D. Cal. 2008). Agreeing, the court found "that there [was] no issue of fact as to whether the policy in question discriminate[d] on its face" because "[t]he language clearly classifie[d] pregnant people (and therefore, only women) in a manner that would tend to deprive them of employment in a fluoroscopy lab." *Id.* at 1102. Thus, unless "the defendant . . . present[ed] a valid [bona fide occupational qualification], . . . a violation of Title VII ha[d] been established. Period." *Id.* at 1104.

Minnesota's reliance on *Cooper* is unavailing. Minnesota plucks a single phrase from that opinion, presents it out-of-context, and argues that the Court foreclosed Title VII challenges to discriminatory policies. In fact, in the *Cooper* litigation, there was an *explicit* finding that not only did the defendant bank discriminated against some (but not other) employees, but that it also "'followed policies and practices' of discriminating against its employees" who worked in specific grades. *Cooper*, 467 U.S. at 873-74 & n.7-8. All that the *Cooper* Court observed is that "the existence of a valid individual claim does not necessarily warrant the conclusion that the individual plaintiff may successfully maintain a class action," or that "a class plaintiff's attempt to prove the existence of a companywide policy . . . may fail even though discrimination against one or two individuals has been

6

proved." *Id.* at 877-78. That observation is as irrelevant to the present case as it is uncontroversial.

For the same reason, Minnesota's argument that the United States must provide definitional boundaries—"the time period at issue, the alleged perpetrator of the discrimination and the alleged discriminatory conduct," Dkt. No. 18 at 17 (quoting *EEOC v. PMT Corp.*, 40 F. Supp. 3d 1122, 1127, 1129-30 (D. Minn. 2014)), falls flat. Under Minnesota's view of the law, the United States would be disabled from bringing a Title VII action even if an employer hung out a "Whites Only" or "No Irish Need Apply" sign. According to Minnesota, such a sign would just be an "abstract policy" beyond the reach of Title VII, and no case could be brought unless the United States could identify specific (and multiple) instances of discriminatory conduct as well as victims of such conduct. This is not the law. *See Sperling v. Hoffmann-La Roche, Inc.*, 924 F. Supp. 1346, 1358 (D.N.J. 1996) ("[A] policy of discrimination may be demonstrated by showing . . . that the employer has an openly declared discriminatory policy."); *United States v. Nobel Learning Communities, Inc.*, 676 F. Supp. 2d 379, 383 (E.D. Pa. 2009) ("A plaintiff can prove a pattern or practice of discrimination by the existence of an express discriminatory policy."); *see also United States v. S. Dakota Dep't of Soc. Servs.*, 344 F. Supp. 3d 1055, 1060 (D.S.D. 2018) (holding that even on summary judgment, much less at pleadings stage, "the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a prima facie case that such a policy existed."); *cf. United States v. Garden Homes Mgmt., Corp.*, 156 F. Supp. 2d 413, 423 (D.N.J. 2001) ("Proof that a party adopted a discriminatory

7

policy satisfies the Fair Housing Act's pattern and practice requirement."). The United States has identified several of Minnesota's policies which are alleged to be discriminatory. No further clarification is required.

  B. <u>Minnesota cannot properly challenge the Complaint's legal sufficiency under Rule 12(e).</u>

Even if Minnesota were correct (and it is not) that Title VII does not prohibit discriminatory policies standing alone, a Rule 12(e) motion is an improper vehicle to raise this objection. A court must deny a Rule 12(e) motion when the pleading is "intelligible" even if it is legally insufficient. *See Est. of Green v. City of Annapolis*, 696 F. Supp. 3d 130, 145 (D. Md. 2023) ("Unlike a motion to dismiss for failure to state a claim, which attacks the legal sufficiency of a complaint, a motion for a more definite statement focuses on whether a party has enough information to frame an adequate answer.") (internal citations omitted). Minnesota can bring a proper motion under Fed. R. Civ. P. 12(b)(6) attacking the legal sufficiency of the Complaint (though such motion would be meritless), but it cannot escape the requirements of Rule 12(b)(6) by masquerading its challenge as one for a more definite statement. *See* Wright & Miller, *supra* § 1376 ("If the movant believes the opponent's pleading does not state a claim for relief, the proper course is a motion under Rule 12(b)(6) even if the pleading is vague or ambiguous. Moreover, even if the pleading is so sketchy that it cannot be construed to show a right to relief, the proper attack is by a motion under Rule 12(b)(6) rather than Rule 12(e).").

  C. <u>Minnesota cannot use Rule 12(e) to limit or preview discovery.</u>

Minnesota also argues that absent further elaboration, "the Complaint will open the gates to limitless discovery." Dkt. No. 18 at 22. Once again, concerns about discovery can be dealt with during the discovery process itself with tools such as motions to quash or motions to compel. Rule 12(e) is not an appropriate tool to limit or even preview discovery. *See Scarbrough v. R-Way Furniture Co.*, 105 F.R.D. 90, 91 (E.D. Wis. 1985) ("Because of the many discovery procedures presently available to litigants in federal courts, district judges are admonished to exercise their discretion sparingly in ordering more definite statements; indeed, a motion under Rule 12(e) must be denied where the subject complaint is not so vague or ambiguous as to make it unreasonable to use pretrial devices to fill any possible gaps in detail.").

This Court's decision in *Eisenach v. Miller–Dwan Medical Center*, 162 F.R.D. 346 (D. Minn. 1995), cited by Minnesota, is not to the contrary and offers no support for Minnesota's position. In *Eisenach*, this Court granted a Rule 12(e) motion because the entirety of the plaintiff's allegation was a conclusory statement that "defendant has engaged in unlawful employment practices in violation of the ADA." *Id.* at 347. As the Court observed, "[t]he Complaint d[id] not state the bases for this conclusion, nor d[id] it identify the Plaintiff's asserted disability, the employment action or actions which transgressed the ADA, or when those employment activities occurred." *Id.* at 347-48. Thus, the *Eisenach* complaint failed to make a "short and plain" statement of relevant facts. Understandably, this Court refused to await discovery to establish the basic facts underlying the allegations of wrongdoing.

9

In contrast, the United States' Complaint identifies specific policies that are, in the United States' view, unlawful, specifies how they are unlawful, and points to specific federal provisions that these policies violate. Minnesota may well disagree with both the factual allegations and the legal analysis, but such disagreement must be resolved on a motion to dismiss, motion for summary judgment, or at trial, rather than through a motion under Rule 12(e).[2] Having satisfied the requirements of Rule 8(a), the United States does not owe Minnesota additional information "in order to satisfy [its] desire for particularity." *In re Byrd*, 51 B.R. 649, 652 (Bankr. S.D. Ohio 1985).

Moreover, Minnesota's own motion undermines its concerns about boundless discovery. Minnesota explains that, at least as of October 2025, a single policy emanating from its Office of Management and Budget governs its affirmative action programs. *See* Dkt. No. 18 at 7. If so, then there will be little need for discovery from each of the "more than 300 unique state government entities." *Id.* at 22.[3] And because the United States challenges Minnesota's *policies*, rather than specific discrete acts, discovery is unlikely to metastasize to "hundreds-of-thousands of personnel actions at every decision point, from recruitment through offer, promotion, transfer, and layoff." *Id.* Thus, even if Minnesota's

---

[2] Minnesota does not argue that the Complaint is a type of "shotgun pleading" where "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before," thus making it impossible for the Defendant to understand which allegations relate to which cause of action. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015).

[3] The United States, of course, reserves the right to explore in discovery both the veracity of this claim, as well as how the policy is actually implemented.

10

concerns about "limitless" discovery were addressable on a Rule 12(e) motion (and they are not), Minnesota's own filing shows that these concerns are not actually present in this case.

      D.     <u>Minnesota is not entitled to relief under Rule 12(e).</u>

Minnesota's entire motion shows that it is not entitled to any relief under Rule 12(e). "As the cases make clear, to withstand a motion under Rule 12(e) a pleading must be sufficiently intelligible for the district court to be able to make out one or more potentially viable legal theories on which the claimant might proceed." Wright & Miller, *supra* § 1376. Minnesota itself identifies at least four "viable legal theories on which the [United States] might proceed." Dkt. No. 18 at 19-21. This alone is evidence enough to conclude the Complaint complies with Rule 8(a), and no further clarification is needed. Moreover, Minnesota spends the first half of its brief explaining how the United States purportedly misunderstands the State's statutes, rules, and policies, and how these legal enactments supposedly work in practice. *Id.* at 3-7. Minnesota then compares its programs to its understanding of Title VII's requirements. *Id.* at 7-8. This disquisition (whatever its merits) shows that Minnesota is fully able to grasp the nature of the allegations and the relief sought. It appears Minnesota strongly disagrees (as is its right) with the allegations of the Complaint or the propriety of the relief sought. But a Rule 12(e) motion is not the proper way to air these disagreements. Like every other litigant, Minnesota will be afforded an opportunity to present its own legal theories and facts supporting the same. But Minnesota is simply not entitled, at this stage, to demand the United States provide it with anything beyond a "short and plain statement" of facts. *See* Fed. R. Civ. P. 8(a).

Minnesota's brief is replete with denials of the United States' allegations, factual explanations of its affirmative action program, and legal argument. The submission itself belies the idea that the Complaint is "so vague or ambiguous that [Minnesota] cannot respond—even with a simple denial—in good faith, without prejudice to [it]self." Wright & Miller, *supra* § 1376.

## CONCLUSION

Minnesota's Rule 12(e) motion is without merit. Its own submission shows that it can answer the factual allegations in the Complaint and is able to discern legal theories on which the United States may rely. Therefore, its motion for a more definite statement under Fed. R. Civ. P. 12(e) should be denied.

| | |
|---|---|
| DATED: March 5, 2026 | Respectfully submitted, |
| DANIEL N. ROSEN<br>United States Attorney<br>District of Minnesota | HARMEET K. DHILLON<br>Assistant Attorney General<br><br>JESUS A. OSETE<br>Principal Deputy Assistant Attorney General<br><br>ERIC SELL<br>Deputy Assistant Attorney General<br><br>Hilary Pinion<br>Acting Chief, Employment Litigation Section<br><br>*s/ Gregory Dolin*<br>GREGORY DOLIN (DC No. 497455)<br>Senior Counsel<br>GRETA GIESEKE (TX No. 24132925)<br>Trial Attorney<br><br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Ave. NW<br>Washington, DC 20530<br>Telephone: (202) 514-3847<br>Email: gregory.dolin@usdoj.gov<br><br>ATTORNEYS FOR PLAINTIFF<br>UNITED STATES OF AMERICA |