UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 26-cv-273 |
| Plaintiff, | (PJS-RWG-DPM/SGE) |
| vs. | **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR A MORE DEFINITE STATEMENT** |
| State of Minnesota, | |
| Defendant. | |

The DOJ chose to file this case under Title VII's most extraordinary enforcement mechanism. It did so after a cursory pre-suit "investigation" that left Minnesota guessing about its scope and target. Yet even now, with both its Complaint and Opposition on file, the DOJ has not said what Minnesota employment practice violates Title VII. The Complaint pleads two counts. The Opposition mentions only one. It never identifies the employment practice underlying Count I. For Count II, it offers only a "web of statutes, rules, and policies" coupled with an assertion that "several" have a "tendency" to discriminate. But a "web of statutes, rules, and policies" is not an identified employment practice. It is a placeholder for one.

If the DOJ had identified a statewide Minnesota policy requiring race- or sex-based decisions, it could quote it. It does not. Instead, it attacks a broad framework governing workforce analysis, planning, and reporting without identifying the feature it claims violates Title VII. That is the problem Rule 12(e) addresses. Minnesota cannot reasonably answer an accusation this broad and indefinite, especially in the extraordinary procedure invoked.

1

## ARGUMENT

The DOJ's Complaint pleads two Title VII claims: the first under Section 703(a)(1), the second under Section 703(a)(2). Minnesota's motion seeks clarification of both. *See* Dkt. 18 at 13–14.

### I. THE DOJ DOES NOT IDENTIFY THE EMPLOYMENT PRACTICE THAT VIOLATES SECTION 703(A)(1).

In Count I, the Complaint alleges that Minnesota maintains unlawful practices, including "race- and sex-based employment goals" and a requirement that agencies "justify" certain hiring decisions and obtain approval before proceeding. Dkt. 1 ¶¶ 59-60.

But the Opposition never explains what employment practice supposedly causes a pattern or practice violation of Section 703(a)(1); it addresses only Count II. The DOJ says this case "challenges Minnesota's policies, rather than specific discrete acts," Dkt. 23 at 10, and says discovery into individual employment decisions across hundreds of State agencies will be unnecessary. *Id*. Even so, Count I still alleges a pattern or practice claim seeking victim-specific equitable relief for employees who allegedly "faced discrimination[.]" Dkt. 1, Prayer for Relief, ¶ c. If the DOJ means to challenge a statewide policy rather than discrete acts, it must identify that policy.

And if the DOJ intends to pursue Count I—and victim-specific relief unrelated to its "classification" claim under Section 703(a)(2)—it must identify the employment practice that allegedly violates Section 703(a)(1).

2

## II. THE DOJ DOES NOT IDENTIFY THE EMPLOYMENT PRACTICE THAT VIOLATES SECTION 703(A)(2).

Count II has the same problem. Minnesota's motion asks a straightforward question: what employment practice does the DOJ contend constitutes Minnesota's alleged "pattern or practice" of discrimination? The Opposition still does not answer. Instead, the DOJ describes a "web" of statutes, rules, and policies without identifying which provision supposedly requires discriminatory employment decisions. A "web" is not a policy. And an inference about how a framework might operate is not an employment practice. Rule 12(e) requires more.

First, the DOJ cites *EEOC v. AutoZone, Inc.* for the proposition that Section 703(a)(2) is broader than Section 703(a)(1) because it reaches practices that "would deprive or tend to deprive" employees or applicants of employment opportunities. Dkt. 23 at 4 (quoting 860 F.3d 564, 568 (7th Cir. 2017)). But that does not answer Minnesota's motion. *AutoZone* did not involve a complaint that failed to identify the challenged employment practice. And the DOJ quotes only part of the analysis. *AutoZone* emphasized that Section 703(a)(2) claims still require "case-specific proof…that the challenged employment action deprived or tended to deprive [an individual] of employment opportunities." 860 F.3d at 568. Without such proof, the court affirmed summary judgment for the employer. *Id*. at 570. So, *AutoZone* does not excuse the DOJ's failure to identify the employment practice it believes violates Title VII.

From that truncated reading of *AutoZone*, the DOJ argues that a pattern or practice complaint puts an employer on notice "merely by alleging the existence of an openly

3

declared discriminatory policy." Dkt. 23 at 4 (citations omitted). But that proposition does not come from *AutoZone*. And it does not help here because the Complaint does not identify *any* statewide policy that discriminates by operation of its own terms.

That defect requires clarification. The DOJ seems to assume that Section 703(a)(2) allows it to allege a facially discriminatory employment policy without identifying the challenged policy. Not so. "The touchstone of explicit facial discrimination is that the discrimination is apparent from the terms of the policy itself." *DiBiase v. SmithKline Beecham Corp.*, 48 F.3d 719, 727 (3d Cir. 1995). Under such a policy, "the protected trait by definition plays a role in the decision-making process[.]" *Id.* at 726 (citing *Int'l Union, UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991)). But neither the Complaint nor the Opposition identifies a Minnesota policy that discriminates on its face.

Similarly, the DOJ cannot avoid identifying the challenged policy by pointing to an undifferentiated "web of statutes, rules, and policies[.]" Dkt. 23 at 1. It appears to infer that Minnesota engages in race- or sex-based employment decisions based on this "web," obviating the need to identify a statewide policy. That is wrong: "[a] facially non-discriminatory policy cannot be transformed into a facially discriminatory policy" by importing facts outside the policy itself. *DiBiase*, 48 F.3d at 727. That is the problem here: a "web" is not a policy, and inferences from this web are not employment practices. The Complaint's failure to identify any facially discriminatory policy of the sort the DOJ invokes by analogy is why Minnesota cannot reasonably prepare an answer.

The rest of the DOJ's authorities do not help for the same reason: each involved a policy whose discriminatory feature appeared on its face—barring teachers from wearing

4

religious garb, denying benefits to workers over a specific age, forbidding employees from filing EEOC charges, or excluding pregnant women from certain jobs. Dkt. 23 at 4–6.[1] Here, by contrast, the Complaint identifies no statewide employment policy or practice with text that directs decisionmakers to choose or reject applicants because of race or sex.

### III. THE COMPLAINT'S LACK OF CLARITY COMPELS DEFINITION NOW.

The DOJ's shifting description of this case is exactly why Rule 12(e) relief is necessary. The July 10 notice of investigation identified a specific target: DHS's "hiring justification" policy. When the DOJ's July 29 RFI targeted a different DHS policy, Minnesota identified the inconsistency and sought clarification. None was provided. Then, when the DOJ made its January 8 reasonable cause determination, authorized suit, and demanded that Minnesota accept an undefined injunction or face this lawsuit, it still refused to identify the specific employment practice that supposedly constituted Minnesota's "standard operating procedure" of discrimination. Minnesota was thus deprived of a meaningful pre-suit opportunity to evaluate, address, or attempt to resolve the DOJ's allegations.

Now the DOJ appears to say that the Complaint can be used to target a different practice altogether: the statewide policy Minnesota adopted in October 2025. Dkt. 23 at 10–11. But that only confirms the need for a more definite statement. The DOJ's July 10 notice initiated the investigation that culminated in the January 8 reasonable cause

---

[1] The cases the DOJ cites are also distinguishable because they were brought under Section 703(a)(1), or different federal nondiscrimination laws. None were brought under Section 703(a)(2) like their "classification" theory does here.

5

determination and suit authorization, yet the DOJ never identified or investigated the October 2025 policy at any point before filing suit. Nor did the DOJ identify that policy before filing suit in a way that allowed Minnesota to evaluate, address, or attempt to resolve the allegation. The DOJ cannot shift from one asserted "web" of policies to a different policy it never investigated and still maintain that the Complaint gives Minnesota fair notice of the claims against it. It does not. The DOJ still has not identified the precise employment practice it contends violates Title VII.

## CONCLUSION

Minnesota asks only that the DOJ identify the employment practice it claims violates Title VII so Minnesota can answer the Complaint and this Court can manage the expedited case the DOJ chose to bring. The problem with the Complaint is simple: it never does that. It does not identify the employment practice underlying Count I, and as to Count II, it points only to a "web" of statutes, rules, and policies without identifying a statewide policy or practice that, by its terms, directs decisions based on race or sex. A pattern-or-practice claim requires a defined employment practice that allegedly constitutes the employer's "standard operating procedure." Because the DOJ has failed to identify the employment practice that supposedly constitutes Minnesota's "standard operating procedure" of discrimination, the Court should grant Minnesota's motion and order the DOJ to provide a more definite statement.

*(signature on following page)*

Dated: March 12, 2026

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

<u> s/ Nick Pladson                     </u>
NICK PLADSON (0388148)
JEFF TIMMERMAN (0352561)
Assistant Attorneys General

PETER J. FARRELL (0393071)
Deputy Solicitor General

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101
(651) 300-7083 (Voice)
(651) 296-7438 (Fax)
Nick.Pladson@ag.state.mn.us
Jeffrey.Timmerman@ag.state.mn.us
Peter.Farrell@ag.state.mn.us

*ATTORNEYS FOR STATE OF MINNESOTA*