UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

Plaintiff,

vs.

State of Minnesota,

Defendant.

Case No. 26-cv-273
(PJS-RWG-DPM/SGE)

**RULE 26(f) REPORT**

The parties/counsel identified below conferred as required by Fed. R. Civ. P. 26(f) and the Local Rules, on July 13, 2026, and prepared the following report. The initial pretrial scheduling conference required under Fed. R. Civ. P. 16 and LR 16.2 is scheduled for 10:00 a.m. on Monday, August 3, 2026 before United States Magistrate Judge Shannon G. Elkins via Zoom – audio only.

## DESCRIPTION OF THE CASE

1. **Concise factual summary of Plaintiff's claims**:

The United States alleges Minnesota's statutory and regulatory affirmative action regime, codified in Title 43A of Minnesota's statutes and governed by Minnesota Administrative Rules chapter 3905, facially violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. This regime impacts civil service staffing and personnel decisions statewide, requiring all Minnesota executive agencies to discriminate against, and limit, segregate, or classify, applicants and employees in violation of 42 U.S.C. § 2000e-2(a)(1) and (a)(2). Minnesota concedes this regime is operative, see generally Doc. 35, and the United States alleges it is an express discriminatory policy that on its face mandates "a pattern or practice of resistance to the full enjoyment of . . . rights secured by [Title VII]," 42 U.S.C. § 2000e-6(a). The United States seeks only prospective declaratory and injunctive relief in support of this claim.[1]

---

[1] If this Court grants its Motion for Summary Judgment, discussed below, the United States will not seek retrospective or monetary relief in this action.

Accordingly, the United States believes that this case can be resolved by summary judgment without discovery and intends to file a Motion for Summary Judgment under Federal Rule of Civil Procedure 56.[2]

## 2. Concise factual summary of Defendant's claims/defenses:

Defendant State of Minnesota denies that state law requires, authorizes, or permits employment decisions based on race, sex, or national origin for applicants and employees in the State's Executive Branch agencies. Minnesota Statutes sections 43A.19 and 43A.191 and Minnesota Rules chapters 3900 and 3905 establish a merit-based equal-employment-opportunity framework under which executive-branch agencies analyze workforce data, prepare affirmative action plans containing aspirational goals, broaden recruitment and outreach efforts, document the job-related bases for selection decisions, and preserve nondiscriminatory selection. No provision of that framework directs or permits the selection of any candidate because of race, sex, or national origin. Nor does it condition any employment action on demographic outcomes. And it does not penalize the selection of any candidate because of the candidate's race, sex, or national origin.

Plaintiff has elected to proceed on "a facial challenge to 'the statutory framework and the rules.'" (Dkt. 34 at 4.) Defendant's Answer (Dkt. 35) denies the material allegations of the Complaint and pleads ten defenses, including that conditions precedent to suit under 42 U.S.C. § 2000e-6(a) were not satisfied; that the challenged provisions are not facially discriminatory; that federal law, including 42 U.S.C. § 2000e-8(c) and the EEO-4 reporting program, required the workforce data collection and analysis the Complaint describes; that Defendants acted in good faith, in conformity with, and in

---

[2] If Minnesota believes that it cannot sufficiently oppose this motion without discovery, Minnesota must file "an affidavit 'affirmatively demonstrating how postponement of a ruling on the motion will enable [it], by discovery or other means, to rebut the [United States'] showing of the absence of a genuine issue of fact.'" *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 894 (8th Cir. 2014) (quoting *Ray v. American Airlines, Inc.*, 609 F.3d 917, 923 (8th Cir. 2010) (alterations omitted)). If Minnesota seeks discovery, it must show "(1) that [it] ha[s] set forth in affidavit form the specific facts that [it] hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *Id.* at 895 (quoting *State of Cal., on Behalf of Cal. Dep't of Toxic Subs. Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)). And if the Court agrees discovery is necessary, it follows that the parties should be able to seek summary judgment if the discovered facts preclude a dispute as to any material facts and the moving party is entitled to judgment as a matter of law. *See Cothran v. Russell*, No. 17-cv-4012, 2019 WL 5400976, at *2–3 (W.D. Mo. Oct. 22, 2019) (suggesting that new facts or law would support a renewed motion for summary judgment).

reliance on written interpretations and opinions of the EEOC, including 29 C.F.R. part 1608; and that the relief sought is barred or limited.

Minnesota proposes focused discovery tailored to the Title VII theory that the United States has chosen to pursue.  The United States has characterized this action as "a facial challenge to 'the statutory framework and the rules.'"  (Dkt. 34 at 4.)  In Title VII terms, that theory requires the United States to identify an official policy whose terms prescribe differential race- or sex-based treatment once its terms are met.

A plaintiff may prove disparate treatment directly by showing that a workplace "policy, practice, or decision relies expressly on a protected characteristic."  *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 213 (2015).  When a written policy itself supplies that proof, the plaintiff need not rely on an inferential burden-shifting method common in Title VII litigation.  *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).  What's more, because this case is brought as a Section 707 action, the United States must also establish that the challenged discriminatory policy was Minnesota's regular or "standard operating procedure," rather than an isolated or sporadic act.  *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977).

If the challenged legal framework does not itself prescribe different employment treatment based on a protected characteristic, the United States cannot establish its claim merely by labeling the framework facially discriminatory.  Instead, the United States would have to prove intentional systemic discrimination using the *Teamsters* burden-shifting framework, producing evidence concerning actual implementation, employment outcomes, statistics, and representative examples.  This distinction is critical to both the United States' claims on the merits, and to the appropriate scope and sequence of discovery.

The threshold question for the United States' chosen theory is therefore whether the policy it challenges, properly identified and understood, itself makes race, sex, or national origin determine a different employment standard, burden, benefit, eligibility determination, or outcome.  *See Int'l Union, UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 197–200 (1991).  The Complaint identifies no single self-executing provision of Minnesota state law, rule, or policy that expressly does so.  Rather, the United States relies on a "web" of statutes, rules, agency plans, review procedures, and related guidance that it believes, collectively, creates a discriminatory statewide policy.

Because the United States raises a "composite-policy" theory, rather than one based on a single, self-executing provision, limited factual development is necessary to define the policy the Court is being asked to review.  That discovery should address Minnesota's authoritative construction of the challenged provisions, the Minnesota Department of Management and Budget's ("MMB") statewide implementing guidance, how the statutes, rules, and guidance function together, the conditions that trigger required procedures, and the actions those procedures compel.  This inquiry concerns the content and system-level operation of the asserted statewide policy, not whether particular agencies complied with

it or whether particular employment decisions produced discriminatory outcomes. This discovery is a necessary prerequisite for this Court to determine whether the challenged framework governs lawful workforce analysis, outreach, barrier identification, and process review within a merit-based selection system, as Minnesota contends, or instead requires differential treatment in individual employment decisions, as the United States alleges.

Discovery is also needed to confirm which components of Minnesota's statutes and rules are at issue in this case, and those that are not. For example, the United States does not acknowledge that a significant portion of the challenged statutes and rules address disability-related affirmative action efforts, the provision of reasonable accommodations, and related requirements. The United States presumably does not challenge these components of the law, because disability is not a protected class under Title VII. Yet, the United States has not identified which particular provisions of Minnesota statute, rule, or policy are targeted by its Complaint.

The United States conditional statement that it will forgo retrospective relief does not narrow the case. By its terms, the disclaimer operates only if the Court grants the United States' motion. If the motion is denied, retrospective and monetary claims revive, and the discovery the United States now calls unnecessary becomes unavoidable. And even a liability ruling would not end matters, because any injunction must be tailored to the specific provisions found unlawful, which itself requires a record identifying what each challenged provision does.

A significant portion of the challenged statutes and rules addresses disability-related affirmative action, reasonable accommodation, and veterans provisions that Title VII does not reach. The United States presumably does not challenge those components, yet it has not identified which provisions its Complaint targets. Discovery confirming what is, and is not, at issue is necessary to any tailored adjudication or remedy.

Minnesota's discovery proposal allows the parties to develop the record necessary to adjudicate the theory the United States has pleaded, allows Minnesota to develop its pleaded defenses, and avoids burdening either party with discovery untethered to that theory. It provides an orderly path to dispositive motions and the prompt resolution contemplated by 42 U.S.C. § 2000e-6(b). The United States' conditional offer to forego retrospective relief if it prevails at summary judgment does not obviate the need for additional discovery. In order to prevail at summary judgment, the United States will have to show that particular components of Minnesota's statutes and rules cause discrimination, and any injunction that issues will need to be tailored to those provisions.

Minnesota is also entitled to discovery concerning the factual predicates of its pleaded defenses. *See* Fed. R. Civ. P. 26(b)(1). A scheduling order that does not permit discovery prior to any motion for summary judgment will prevent Minnesota from developing its defenses concerning conditions precedent, federal reporting obligations,

good-faith reliance on EEOC guidance, the operative status of challenged provisions, the permissible scope of relief, and other equitable and justiciability issues.

### 3. Statement of jurisdiction (including statutory citations):

Plaintiff invokes the Court's jurisdiction under 42 U.S.C. § 2000e-6(a) and 28 U.S.C. §§ 1331 and 1345. The Attorney General filed a certificate under 42 U.S.C. § 2000e-6(b) (Dkt. 11), and this three-judge court was designated pursuant to that section and 28 U.S.C. § 2284. Minnesota's defenses include that conditions precedent to suit were not satisfied but, subject to those defenses, does not contest the Court's subject matter jurisdiction.

### 4. Summary of factual stipulations or agreements:

None to date.

### 5. Statement of whether a jury trial has been timely demanded by any party:

No party has demanded a jury.

### 6. Statement of whether all process has been served, all pleadings filed, and any plan for any party to amend pleadings or add additional parties to the action.

All process has been served and all pleadings have been filed. Neither party presently anticipates amending its pleading or adding parties.

### 7. If applicable, a list of all insurance carriers/indemnitors, including limits of coverage of each defendant or statement that the defendant is self-insured.

Defendant State of Minnesota is self-insured.

### 8. If the parties would like the case resolved under the Rules of Procedure for Expedited Trials of the United States District Court for the District of Minnesota, a statement of the parties' agreement to that effect.

The parties do not agree to resolve the matter under the Rules of Procedure for Expedited Trials of the United States District Court for the District of Minnesota.

### 9. Protective Order.

Because it is the United States' position that discovery is not necessary, the United States does not believe a protective order is necessary at this stage. If the Court determines that discovery is necessary, the parties will meet and confer to negotiate reasonable terms for a suitable protective order.

10.  **Settlement.**

1.  The parties must conduct a meaningful discussion about possible settlement before the initial pretrial conference, including a written demand by the Plaintiff(s) and a written response by each Defendant.  The parties must discuss whether they believe the case is appropriate for a private mediation or an early settlement conference with the Court (or another form of alternative dispute resolution) would be productive and, if so, when it should occur and what discovery, if any, would be necessary to conduct before such a conference.

     The results of that discussion, including any proposals or recommendations, are as follows:

     Parties discussed potential settlement before the suit was filed.  The United States proposed to resolve this matter by entering a pre-litigation consent decree that would permanently enjoin Minnesota from using race, color, national origin, or sex in its employment decisions.  Minnesota declined to enter such a decree.

2.  Each party will email to Magistrate Judge Elkins' chambers, no later than one (1) week before the pretrial conference, a confidential letter of no more than three (3) pages, setting forth what settlement discussions have taken place, whether the party believes an early settlement conference would be productive, what discovery each party believes is necessary before an early settlement conference can take place and any additional, confidential information about the party's interest in settlement or possible settlement proposals as may be of assistance to Magistrate Judge Elkins in planning or furthering early settlement efforts.   [**NOTE:** This confidential letter should not advance arguments or positions on issues that may come before Magistrate Judge Elkins for ruling.]

3.  The Court will discuss this topic with the parties at the pretrial conference and will set a date for an early settlement conference or for a status conference to determine when the case will be ready for a productive settlement conference.

11. **Trial.**

a.  Trial by Magistrate Judge.

    The parties **have not** agreed to consent to jurisdiction by the Magistrate Judge pursuant to Title 28, United States Code, Section 636(c).

b.  Trial Length.

    Defendant believes that this case will be ready for trial on **a date to be determined following dispositive motion practice**, with an anticipated **bench**

trial of a length that will be determined following resolution of any dispositive motions.

The United States believes that this case presents purely legal issues and can be resolved through summary judgment without trial. But if necessary, following the Court's resolution of dispositive motions, the United States also believes that this case will be ready for a bench trial on a date and of a length that will be determined following dispositive motion practice.

## 12. Other Issues.

The parties will meet and confer regarding these issues should the Court determine that discovery is necessary prior to United States' filing of a motion for summary judgment.

a. <u>Discovery of Electronically Stored Information</u>. The Parties have discussed issues about preservation, disclosure, production, or discovery of electronically stored information, as required by Fed. R. Civ. P. 26(f), and request the Court to include the following agreement in the scheduling order: N/A.

b. <u>Claims of Privilege or Protection</u>. The parties have discussed issues about claims of privilege and of protection as attorney work-product or trial preparation materials, as required by Fed. R. Civ. P. 26(f), including whether the parties agree to a procedure to assert these claims after production, or have reached any other agreements under Fed. R. Evid. 502, and **<u>do / do not</u>** request the Court to include the following agreement in the scheduling order or as part of a protective order:

c. The parties **do / do not** agree to follow the procedure set forth in Fed. R. Civ. P. 26(b)(5)(B) regarding information produced in discovery that is subject to a claim of privilege or protection as trial-preparation material. Pursuant to Fed. R. Evid. 502, the inadvertent production of any documents in this proceeding shall not constitute a waiver of any privilege or protection applicable to those documents in this or any other federal or state proceeding.

If the parties **do / do not agree** to the foregoing language, and/or have reached other or additional agreements concerning the process for handling privileged or work product information that is produced in discovery and wish them to be incorporated into the Pretrial Scheduling Order, those agreements should be set forth here: _____.

13. **Scheduling Order and Discovery.**

The parties have conferred regarding discovery but have **not agreed** on a proposed discovery plan and scheduling order. The parties propose different discovery plans for this Court's consideration.

### a. Plaintiff's Position.

### (1) Discovery.

The United States does not believe discovery is necessary because this matter can be decided on a motion for summary judgment.[3]

Below, Minnesota has specified various categories of materials on which it expects to seek discovery.  The United States takes the view that most of the materials sought by Minnesota are not subject to discovery because these materials are already in Minnesota's possession, or are publicly available documents, or are subject to various privileges, such as deliberative process privilege, attorney-client privilege, attorney work-product doctrine, and executive privilege.  Moreover, without awaiting the pretrial conference or a scheduling order, Minnesota has already served various and extensive interrogatories and requests for admissions on the United States.  Among other things, these documents seek information on privileged communications, such as Presidential conversations with members of his Cabinet.  If the United States is required to engage in discovery, rather than proceed with summary judgment, it will be forced to assert and vigorously litigate these claims of privileges.

### (2) Schedule for Dispositive Motion.

The United States proposes the following briefing schedule related to this motion:

Summary Judgment Opening Brief:        **August 14, 2026**

Merits or Rule 56(d) Response Brief/Cross-Motion for Summary Judgment (If any):
                                                            **September 11, 2026**

United States Response/Reply Brief:        **October 16, 2026**

Minnesota Reply Brief (if any):        **October 30, 2026**

---

[3] If the Court determines that discovery is necessary, the United States requests to propose a discovery plan, at the time of the Court's determination, including discovery limits and a discovery schedule with expert discovery after fact discovery.

**b. Defendant's Position.**

**(1) Discovery.**

Minnesota proposes a discovery phase limited to the following subjects:

i. the specific statute, rule, policy, procedure, or combination of provisions the United States contends is facially discriminatory, and the different employment consequence it contends follows from that policy's terms;

ii. Minnesota's historical and contemporaneous interpretation of the challenged framework, including MMB's statewide guidance, training, templates, plan-approval standards, and instructions to agencies;

iii. the framework's institutional operation at the statewide level;

iv. the nonprivileged factual bases for Minnesota's defenses, including federal recordkeeping and reporting requirements, Minnesota's reliance on written EEOC regulations and guidance, the current operative status of challenged provisions, and the relationship between any proven violation and the relief the United States seeks; and

v. the nonprivileged factual and analytical basis for the United States' claims and compliance with Section 707's pre-suit requirements, together with discovery proportionate to Minnesota's selective-enforcement and other equitable defenses.

On Tuesday July 21, 2026, Minnesota commenced discovery in this matter by serving the United States with interrogatories, requests for admission, and requests for the production of documents.

On Wednesday July 22, 2026, Minnesota served a third-party subpoena on the U.S. Equal Employment Opportunity Commission for documents relevant to the claims and defenses in this matter.

**(2) Expert Discovery.**

Minnesota anticipates that it **will** require expert witnesses at trial and depending on whether the United States seeks to rely on expert testimony, may retain a rebuttal expert. and propose that the Court establish the following plan for expert discovery:

Disclosure of the identities of expert witnesses under Rule 26(a)(2)(A) and the full disclosure required by Rule 26(a)(2)(B) (accompanied by the written report prepared and

signed by the expert witness) and the full disclosures required by Rule 26(a)(2)(C), shall be made as follows:

Identities by Plaintiff on or before **October 1, 2026**.

Disclosures by Plaintiff on or before **November 1, 2026**.

Identities by Defendant on or before **December 1, 2026**.

Disclosures by Defendant on or before **January 15, 2027**.

Rebuttal Expert identities and disclosures on or before **March 1, 2027**.

Expert discovery, including depositions, shall be completed by **June 1, 2027.**

**(3) Limitations on Discovery.**[4]

### i.   Initial Disclosures.

The parties must make their initial disclosures required by Rule 26(a)(1) on or before **August 15, 2026**.[5]

### ii.   Discovery Deadline.

Fact discovery procedures shall be commenced in time to be completed on or before **May 1, 2027.**

### iii.   Rule 30(b)(6) Depositions.

Both parties will produce an appropriate witness for one Rule 30(b)(6) deposition. Minnesota will produce a Rule 30(b)(6) designee to testify regarding the State's understanding and statewide administration of the challenged framework. The United States should also produce a Rule 30(b)(6) designee to provide testimony identifying the precise components of the Minnesota policy challenged, the nonprivileged factual basis for alleging that it prescribes differential treatment, the scope of the pre-suit investigation and

---

[4] These limitations rest on the United States' election to proceed facially. If the United States contends that any material beyond the text of the challenged statutes, rules, and statewide policies supports liability, the limitations in this paragraph dissolve, and Minnesota may take full responsive discovery, before any dispositive motion is heard.

[5] Initial disclosures under Rule 26(a)(1) are required by rule and are not deferred by a party's intention to file a dispositive motion.

reasonable-cause determination, and other nonprivileged matters relevant to Minnesota's defenses.

### iv. Written Discovery and Depositions.

Written discovery should be similarly confined. This initial phase will not encompass broad applicant-level data, individual employment decisions, victim-specific files, statewide statistical outcome discovery, or agency-level implementation evidence. Defendant proposes that the Court limit the use and number of discovery procedures as follows:

No more than a total of **60** interrogatories, counted in accordance with Rule 33(a), shall be served by each side.

No more than **60** document requests shall be served by each side. The parties understand that objections to document requests must meet the requirements of Rule 34(b)(2)(B).

No Rule 35 Medical Examinations shall be taken by any party.

Other than expert depositions and 1 Rule 30(b)(6) deposition taken by each party, the parties shall take no more than one (1) deposition. Any additional depositions will only be permitted upon a showing of good cause by the requesting party.

### v. Non-Dispositive Motion Schedule.

All motions that seek to amend the pleadings or to add parties must be filed and served on or before **September 1, 2026**.

All non-dispositive motions and supporting documents, including those that relate to fact discovery, shall be filed and served on or before **May 15, 2027**.

All non-dispositive motions and supporting documents that relate to expert discovery shall be filed and served on or before **June 15, 2027**.

### (4) Post-Discovery Status Conference.[6]

Once discovery is complete, Minnesota proposes that the parties submit short position statements identifying whether the record is sufficient for dispositive motions and, if not, the specific additional discovery claimed to be necessary. The parties will then participate in a Status Conference that will resolve any outstanding discovery matters,

---

[6] Minnesota has included deadlines in this Rule 26(f) report to facilitate discussion at the Rule 16 Conference but is open to adjusting those deadlines and recognizes that the needs of the case make require further adjustments.

approve any targeted additional discovery needed, and set a hearing and briefing schedule consistent with the preferences of the three-judge panel.

This sequence will develop the record necessary to adjudicate the Title VII theory the United States has pleaded, allows Minnesota to develop its defenses, and does so without burdening either party with unbounded and burdensome discovery.  It also provides an orderly path to dispositive motions and the prompt resolution contemplated by 42 U.S.C. § 2000e-6(b).

**(5)  Dispositive Motion Schedule.**

Minnesota **does** believe that expert discovery must be completed before dispositive motions are filed.

Minnesota recommends that all dispositive motions be filed and served (and heard, depending on the schedule of the three-judge district court panel assigned) on or before **September 15, 2027**.


Dated:  July 27, 2026

KEITH ELLISON
Attorney General
State of Minnesota

 s/ Nick Pladson
NICK PLADSON (0388148)
JEFF TIMMERMAN (0352561)
Assistant Attorneys General

PETER J. FARRELL (0393071)
Deputy Solicitor General

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 300-7083 (Voice)
(651) 296-7438 (Fax)

Nick.Pladson@ag.state.mn.us
Jeffrey.Timmerman@ag.state.mn.us
Peter.Farrell@ag.state.mn.us

*ATTORNEYS FOR STATE OF MINNESOTA*

Dated: July 27, 2026

HARMEET K. DHILLON
Assistant Attorney General

JESUS A. OSETE
Principal Deputy Assistant Attorney General

ERIC SELL
Deputy Assistant Attorney General

HILARY PINION
Acting Chief, Employment Litigation Section

*s/ Greta Gieseke*
GREGORY DOLIN (DC No. 497455)
Senior Counsel
GRETA GIESEKE (TX No. 24132925)
Attorney

Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 514-3847
Email: greta.gieseke@usdoj.gov


*ATTORNEYS FOR PLAINTIFF*
*UNITED STATES OF AMERICA*

13