UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

Plaintiff,

vs.

State of Minnesota,

Defendant.

Case No. 0:26-cv-00273
(PJS-RWG-DPM/SGE)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S AMENDED COMPLAINT**

## INTRODUCTION

The United States began this case with two counts and one theory: the statutes, rules, and guidance it challenges (the "Composite Policy") facially require employment practices that Section 703 of Title VII forbids. Dkt. 1 ¶¶ 56–72; Dkt. 34 at 4; Dkt. 40 at 2. Counts 1 and 2 assert that theory. The Amended Complaint now adds Counts 3 and 4, which challenge the same Composite Policy and seek the same relief. Dkt. 55 ("Am. Compl.") ¶¶ 2, 12–32, 77–88; *id.* at 23. Neither states a claim of its own.

Count 3 recasts the same allegations as "barriers" that "deter[]" employment decisions and asserts that Section 707(a) reaches resistance "not limited to" the unlawful employment practices Title VII defines. *Id.* ¶¶ 78–83. But Section 707(a) secures no right and defines no wrong. It authorizes the Attorney General to sue over a "pattern or practice of resistance to the full enjoyment of any of the rights *secured by this subchapter*," 42 U.S.C. § 2000e-6(a) (emphasis added), and the rights *the subchapter* secures are the ones

Sections 703 and 704 create. For an employer, the only way to resist those rights is to violate those sections. Count 3 pleads a standard the statute does not contain.

Count 4 fares no better. It invokes Section 708, which supplies a rule of decision, not a cause of action, and the only predicate it pleads is the one "described in Counts 1 and 2." Am. Compl. ¶ 87. A preemption label changes neither what Section 707(a) requires the United States to prove under Section 703, nor the relief that proof would yield. At a minimum, Count 4 duplicates Counts 1 and 2 and should be dismissed.

Counts 3 and 4 should be dismissed.

## BACKGROUND

### A. Minnesota's Merit System and the Challenged Composite Policy.

Chapter 43A is the civil service code for Minnesota's executive branch. It governs how the State's agencies recruit, select, classify, pay, and discipline their employees, under a commissioner who serves as "the chief personnel and labor relations manager of the civil service." Minn. Stat. § 43A.04, subd. 1(a); see id. § 43A.01, subd. 1. Its stated design is "an efficient and effective merit based personnel management system." *Id.* § 43A.01, subd. 1. And its governing command, captioned "Precedence of merit principles and nondiscrimination," is that "all personnel actions be based on the ability to perform the duties and responsibilities assigned to the position without regard to . . . race . . . [or] sex." *Id.*, subd. 2. Entry to the classified service is by "successful competition in a selection process," and every selection criterion must be "job related." *Id.* § 43A.10, subds. 1–2.

Everything the United States challenges sits beneath that non-discrimination command. The challenged provisions, Minnesota Statutes sections 43A.09, 43A.14, 43A.19, and 43A.191 and Minnesota Rule 3905, tell agencies to compare workforce representation with the availability of qualified workers in the relevant labor market, identify areas of underutilization and corresponding aspirational goals, broaden recruitment, document hiring decisions where goals remain unmet, and report the results for review and audit. Those obligations run to the agency, not to any individual selection. An agency that does not meet its goals must "justify its nonaffirmative action hires . . . according to criteria issued by the department," and must "demonstrate a good faith effort to recruit protected group members by following an active recruitment plan," "implement a coordinated retention plan," and "have an established complaint resolution procedure." Minn. Stat. § 43A.191, subd. 3(c). An agency out of compliance must propose programs and reallocate resources, *id.*, subd. 3(f), not alter whom it selects. Selection remains governed by job-related criteria, *id.* § 43A.10, subd. 2, and no law or rule directs an agency to select anyone because of race or sex.

The United States reads the same provisions, Minnesota Statutes section 43A.01 included, as discriminatory on their face. Am. Compl. ¶¶ 2, 12–32, 40. The Court has called this their "composite-policy" theory, Dkt. 40 at 2, and Counts 1 and 2 will test it.

**B. The Investigation and Original Complaint.**

The United States opened its investigation in July 2025 to determine whether Minnesota was engaged in a "pattern or practice of discrimination based on race and sex

in violation of Title VII," and months later concluded that the Composite Policy, on its face, requires conduct prohibited by Section 703(a). Am. Compl. ¶¶ 36–44. The original Complaint pleaded two counts: discrimination prohibited by Section 703(a)(1) and limiting and classifying prohibited by Section 703(a)(2). Dkt. 1 ¶¶ 56–72.

The original Complaint also attached one agency's policy as its example of the alleged violation and sought relief for employees and applicants who allegedly "faced discrimination." Dkt. 1 ¶ 45; Dkt. 1-2; Dkt. 1, Prayer ¶ (c). Minnesota answered that the attached policy briefly applied to one agency and had been superseded by a statewide policy before the United States filed suit. Dkt. 35 ¶ 45. The Amended Complaint no longer attaches that policy or seeks relief for any individual. Am. Compl. ¶ 47.

The original Complaint also alleged that the Composite Policy failed "even under the permissive *Weber/Johnson* framework." Dkt. 1 ¶ 55; *see id.* ¶¶ 3–7, 11 (discussing *United Steelworkers v. Weber*, 443 U.S. 193 (1979), and *Johnson v. Transportation Agency*, 480 U.S. 616 (1987)). At the Rule 12(e) hearing, the United States told the Court it was "teeing up a challenge to the *Weber/Johnson* framework" and proposed summary judgment "on the *Weber/Johnson* question." Dkt. 33 at 9:4–5, 9:23–10:1. The Amended Complaint omits that framework entirely. Count 3 instead pleads that Section 707 liability does not depend on any unlawful employment practice. Am. Compl. ¶ 78.

### C. The United States Elected to Pursue a Facial Challenge, and the Case Is Proceeding on That Basis.

When Minnesota sought a more definite statement, the United States confirmed that the case is a facial challenge to "'the statutory framework and the rules' as a pattern and

practice of discrimination." Dkt. 34 at 4 (citing Dkt. 33 at 9:3–4, 10:18–20). It argued that the Composite Policy was discriminatory on its face and therefore permitted prospective relief without proof of particular discriminatory employment decisions. *Id*. It added that if Minnesota thought the pleading did not state "a claim under 707, then they can file a motion to dismiss." Dkt. 33 at 10:15–17. The Court denied Minnesota's Rule 12(e) motion but expressly left the merits unresolved: Rule 12(e) addresses intelligibility, "not . . . the merits of DOJ's claims." Dkt. 34 at 6. The Court then limited discovery to the United States' "composite-policy" theory and Minnesota's affirmative defenses, the record needed "to adjudicate the theory the United States has pleaded." Dkt. 40 at 2–3.

Weeks later, the United States filed a stripped-down Amended Complaint. It retains Counts 1 and 2 and claims for prospective declaratory and injunctive relief, drops every claim for victim-specific relief, and adds two theories directed at the same Composite Policy. Am. Compl. ¶¶ 2–3, 12–32; *id*. at 23. As described above, Count 3 alleges that Section 707 liability is "not limited to the unlawful employment practices enumerated in other sections of Title VII, including Section 703(a)," and labels the features of the Composite Policy "barriers" that "deter[]" employment decisions and constitute "resistance." *Id*. ¶¶ 78, 80–81. Count 4 alleges that "[a]s described in Counts 1 and 2," the Composite Policy requires unlawful employment practices and is therefore preempted, and that it is preempted "to the extent that it otherwise conflicts with Title VII." *Id*. ¶¶ 85–88. As before, the United States "brings this action under Section 707." *Id*. ¶ 10.

## STANDARD

To survive a motion under Rule 12(b)(6), a complaint must plead sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts well-pleaded factual allegations as true, but that tenet "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

This motion does not ask the Court to construe Minnesota's statutes and rules, or to decide whether the Amended Complaint characterizes them correctly. Counts 1 and 2 raise those questions. Minnesota denies that the Composite Policy requires or permits any employment decision based on race or sex, and it will meet Counts 1 and 2 on the record the Court has ordered.

But Counts 3 and 4 fail and should be dismissed before those questions are reached. Whether Section 707(a) permits a finding of "resistance" against an employer without a violation of Section 703 or 704, as Count 3 pleads, and whether the United States may obtain a Title VII judgment under the label of "preemption" without proving what Section

707(a) requires, as Count 4 seeks, are questions that the text of Title VII answers independent of the Composite Policy. The answer to both is no.

## ARGUMENT

### I. COUNT 3 FAILS BECAUSE SECTION 707(a) IS AN AUTHORIZATION FOR THE ATTORNEY GENERAL'S SUIT, NOT A SOURCE OF LIABILITY APART FROM SECTIONS 703 AND 704.

Title VII tells employers what they may not do through substantive commands. Section 703 forbids them from discriminating against an individual because of race or sex, and from limiting, segregating, or classifying employees in ways that deprive or tend to deprive individuals of opportunities because of race or sex. 42 U.S.C. § 2000e-2(a). Section 704 forbids them from retaliating against those who oppose such practices or participate in proceedings to remedy them. *Id.* § 2000e-3(a).[1]

Section 707(a) is different in kind. It tells the Attorney General that he may sue when someone "is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter," and the pattern or practice "is of such a nature and is intended to deny the full exercise" of those rights. *Id.* § 2000e-6(a). That is an enforcement provision, not a substantive prohibition on employer conduct. The rights

[1] The United States has never alleged retaliation in this matter. The investigation it describes concerned alleged discrimination based on race and sex, Am. Compl. ¶¶ 36–42, and neither the original Complaint nor the Amended Complaint invokes Section 704. *See* Dkt. 1; Dkt. 55.

allegedly resisted, and the employer conduct that violates them, come from Sections 703 and 704.

### A. Section 707(a) Secures No Substantive Right of Its Own and Defines No Wrong by an Employer Beyond Violations of Sections 703 and 704.

Section 707(a) does not itself secure any substantive right. By its terms, it reaches only resistance to rights "secured by this subchapter." 42 U.S.C. § 2000e-6(a). And where, as here, the defendant is itself the employer and the challenged conduct consists of its own employment practices, Sections 703 and 704 define the conduct Title VII forbids. Section 707(a) does not let the Government label as 'resistance' any employer conduct that does not violate Sections 703 or 704.

The Supreme Court has described the government's burden under Section 707(a) in exactly those terms: proof that Section 703 violations were the employer's standard operating procedure. In *International Brotherhood of Teamsters v. United States*, the United States sued under Section 707(a) on the theory that the employer, "in violation of § 703(a) of Title VII, regularly and purposefully treated" minority employees less favorably. 431 U.S. 324, 335 (1977). "[B]ecause it alleged a systemwide pattern or practice of resistance to the full enjoyment of Title VII rights," the government had to establish that "racial discrimination was the company's standard operating procedure." *Id.* at 336. The Court drew that standard from the legislative history of Section 707(a), under which a pattern or practice exists when "a company repeatedly and regularly engaged in acts prohibited by the statute." *Id.* at 336 n.16 (quoting 110 Cong. Rec. 14270 (1964) (statement of Sen. Humphrey)).

The Third Circuit applied the same principle to the kind of claim the United States brings here: a Section 707 challenge to a state statute. The Commonwealth of Pennsylvania, it explained, "will only be guilty of a 'pattern or practice of resistance' to Title VII rights if the subject school boards, in obeying the [state law], violate teachers' Title VII rights." *United States v. Bd. of Educ. for Sch. Dist. of Phila.*, 911 F.2d 882, 892 n.9 (3d Cir. 1990). The statute "would be a 'pattern or practice of resistance' if the actions taken in compliance with the statute would violate Title VII if taken independent of the statute." *Id*. Thus, the United States' own authority for its facial theory, Am. Compl. ¶ 34, requires what Count 3 says it need not show: that compliance with the state law would cause the employer to violate Section 703 or 704.

Other courts of appeals agree that a pattern or practice is a method of proving violations of Section 703, not an independent source of liability. *Council 31, AFSCME v. Ward*, 978 F.2d 373, 378 (7th Cir. 1992). The Second Circuit explained that pattern-or-practice references confer no substantive right per se; they allow the Government to enforce Title VII on behalf of groups by alleging a regular procedure or policy of unlawful discrimination. *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 487–88 (2d Cir. 2013); *accord EEOC v. McDonnell Douglas Corp.*, 191 F.3d 948, 951 (8th Cir. 1999) (requiring proof that unlawful discrimination was the employer's regular procedure or policy). Section 707(a)'s "resistance" language likewise does not make conduct unlawful apart from the Title VII rights it protects.

When the Equal Employment Opportunity Commission advocated a broader reading a decade ago, the Seventh Circuit "reject[ed] the EEOC's expansive interpretation of its powers under Section 707(a)." *EEOC v. CVS Pharmacy, Inc.*, 809 F.3d 335, 341 (7th Cir. 2015).[2] Suits under Section 707(a), it held, "must challenge practices that threaten the employee's right to be free from workplace discrimination and retaliation for opposing discriminatory employment practices," which are "the only rights secured by Title VII." *Id.*

As the Seventh Circuit persuasively explained, Section 707(a) "does not create a broad enforcement power for the EEOC to pursue non-discriminatory employment practices that it dislikes," but it "simply allows the EEOC to pursue multiple violations of Title VII (i.e., unlawful employment practices involving discrimination or retaliation defined in Sections 703 and 704) in one consolidated proceeding." *Id.* Because the Commission had alleged neither discrimination nor retaliation, its suit "did not state a claim under Title VII." *Id.* The court also held that there is "no difference between a suit challenging a 'pattern or practice of resistance' under Section 707(a) and a 'pattern or

[2] The EEOC sued CVS over a severance agreement that allegedly deterred employees from filing charges or communicating with the Commission. It argued that its suit challenged a "pattern or practice of resistance" under Section 707(a), not a "pattern or practice of discrimination" under Section 707(e), and therefore did not require Section 706's pre-suit procedures. The court held that Section 707(a) does not allow the EEOC to challenge practices untethered to Title VII's prohibitions on discrimination (Section 703) and retaliation (Section 704), and that a Section 707 action by the EEOC remains subject to Section 706's procedures. 809 F.3d at 339–43. The Attorney General's pre-suit obligations differ. *See* Am. Compl. ¶ 8. But that procedural difference does not change the rights Section 707(a) protects: the provision reaches patterns or practices of resistance to rights secured by Title VII, whoever brings suit.

practice of discrimination' under Section 707(e)." *Id.* at 342-43; *see also Serrano v. Cintas Corp.*, 699 F.3d 884, 894 (6th Cir. 2012) (claims "under § 707 . . . are limited to allegations of a pattern or practice of discrimination").

In 2020, the Commission adopted by vote a written interpretation rejecting the position the EEOC had urged in *CVS*: Section 707(a) "does not create an independent basis for a lawsuit untethered to other violations of Title VII," because "resistance" is "directly tied to the statutory rights specified elsewhere in Title VII. *See* Commission Opinion Letter: Section 707, EEOC-CVG-2020-2, pt. I (Sept. 3, 2020) ("Opinion Letter").[3]

Although it does not bind this Court, the Commission's interpretation, "made in pursuance of official duty" and "based upon . . . specialized experience," is among the materials "to which courts and litigants [could] properly resort for guidance," with weight that depends on "the validity of its reasoning" and "all those factors which give it power to persuade." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 388 (2024) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944)); *3M Co. v. Comm'r of Internal Revenue*, 154 F.4th 574, 582 (8th Cir. 2025) (applying those factors after *Loper Bright*). It is persuasive here because it tracks the statutory text, the decisions of the courts of appeals, and the historic position of both the Commission and the Attorney General.[4]

---

[3] Available at https://www.eeoc.gov/laws/guidance/commission-opinion-letter-section-707 (last visited October 9, 2026).

[4] The Commission's 2020 interpretation of Section 707(a) is not new. When *Teamsters* was before the Supreme Court, the United States and the Commission told the Court that the question in a pattern-or-practice case is "whether a company has regularly engaged in

The Opinion Letter expressly declines to opine on DOJ's authority under Section 707. Opinion Letter, pt. I n.6. That reservation leaves the agency question open, but it supplies no basis for a different substantive rule. Section 707(a) authorizes the Attorney General to sue for a pattern or practice of resistance to rights "secured by this subchapter," and the Letter itself states that "any actions taken by the Attorney General pursuant to section 707 must be tied to a 'pattern or practice' of *discrimination*." *Id*. (*emphasis added*).

Section 707(a) initially vested pattern-or-practice authority in the Attorney General. In 1972, Congress gave the Commission authority to pursue such actions against nongovernmental employers, with the understanding that the EEOC could "institute exactly the same actions" as DOJ in pattern-or-practice cases. *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 328–29 (1980). In 1978, Reorganization Plan No. 1 returned to the Attorney General the Commission's Section 707 functions for litigation against state and local governments. Reorg. Plan No. 1 of 1978, § 5, 92 Stat. 3781 Exec. Order No. 12,068, 43 Fed. Reg. 28,971 (June 30, 1978); *see also United States v. Rhode Island Dep't of Corr.*, 81 F. Supp. 3d 182, 187–89 (D.R.I. 2015) (tracing transfer history). Those transfers explain the agencies' different pre-suit procedures, see Am. Compl. ¶ 8, but do not make Section 707's substantive reach depend on which agency sues.

*discriminatory acts*." Br. for U.S. & EEOC at *26 & n.30, *Teamsters*, 431 U.S. 324 (Nos. 75-636 and 75-672), 1976 WL 181355 (*emphasis added*).

Count 3's broader reading would let Section 707(a) reach an employer's pattern or practice untethered to violations of Sections 703 and 704. The text, legislative history, the Commission's interpretation, and appellate decisions foreclose that reading.

### B. *Doherty*'s Inference from Section 707(a)'s Wording Contradicts the Statute's Text and History.

The United States relies on a district court decision that interpreted Title VII differently. Am. Compl. ¶ 78 (citing *EEOC v. Doherty Enters., Inc.*, 126 F. Supp. 3d 1305, 1311 (S.D. Fla. 2015)). *Doherty* reasoned that because Section 706 speaks of unlawful employment practices and Section 707(a) does not, "a resistance claim is not limited to cases involving an unlawful employment practice." 126 F. Supp. 3d at 1311.

As explained above—and as the Commission later agreed—*Doherty* is wrong: Section 707(a)'s text is unambiguous, and there is no freestanding "resistance" claim independent of the substantive rights secured by Sections 703 and 704 of Title VII. But even if the statute were ambiguous, Title VII's legislative history confirms that reading. As the principal sponsor of Title VII in the House of Representatives explained, "[t]he words 'resistance to enjoyment of the rights' under the act means no more than refusal to comply with titles II or VII of the act; that is, engaging in any prohibited discrimination." 110 Cong.

Rec. 15,895 (1964) (statement of Rep. Celler)[5]; *see Teamsters*, 431 U.S. at 336 n.16 (citing remarks of Rep. Celler and others).

*Doherty* did not address Title VII's legislative history and preceded the Seventh Circuit's decision in *CVS*. 126 F. Supp. 3d at 1311–12. Against that backdrop, "there is technically no such thing as a 'pattern or practice violation' or a § 707 violation; there are just patterns or practices of violating § 703." *EEOC v. Bass Pro Outdoor World, LLC*, 35 F. Supp. 3d 836, 853 n.10 (S.D. Tex. 2014).

[5] Available at https://www.congress.gov/88/crecb/1964/07/02/GPO-CRECB-1964-pt12-4-2.pdf (PDF page 27 of 117) (last visited October 9, 2026).

### C. Section 707(a)'s Distinct Role is Scale and Reach.

Even though it does not create a separate "resistance" claim, Section 707(a) still does distinct work: it grants the government two enforcement tools Title VII does not extend to private litigants.

The first is scale. A private plaintiff can sue over one employment decision and must satisfy Rule 23 of the Federal Rules of Civil Procedure to litigate on behalf of a class. Under Section 707, the Attorney General can challenge a "pattern or practice," an employer's standard operating procedure, and obtain an injunction "against continuation of the discriminatory practice." *Teamsters*, 431 U.S. at 336, 361. And unlike private parties, the Attorney General need not "comply with the requirements of Rule 23[.]" *Gen. Tel. Co.*, 446 U.S. at 327. Aggregation changes how many violations may be tried together. It does not change what counts as a Title VII violation in the first place.

The second is reach. Sections 703 and 704 impose duties on employers, employment agencies, and labor organizations. 42 U.S.C. §§ 2000e-2(a)–(c), 2000e-3(a). Although private plaintiffs may sue only those categories of defendants, Section 707(a), as enacted in 1964, allowed the Attorney General to sue "any person or group of persons" who engaged in a "pattern or practice of resistance" to the rights those sections secure, where such "pattern or practice is of such a nature and is intended to deny the full exercise of [those] rights." *Id.* § 2000e-6(a). Invoking that authority, the Attorney General can sue not

only employers, employment agencies, and labor organizations, but also others who acted *to cause* them to violate Sections 703 or 704.[6]

The Attorney General used that authority against the Klan, which, among other things, had "Boycott Rules" requiring members to boycott "any merchant using Negro employees to serve or wait upon persons of the white race." *United States ex rel. Katzenbach v. Original Knights of the Ku Klux Klan*, 250 F. Supp. 330, 356 (E.D. La. 1965). Section 707(a) thus allowed the Attorney General to address Klan acts that caused employers "who might otherwise wish to comply with [Title VII] but fear retaliation and economic loss" not to hire Black employees. *Id*. at 356 (adding that "[t]his is precisely what the [K]lan's Boycott Rules are designed to do").[7]

Likewise, the Third Circuit held that although the Commonwealth of Pennsylvania was not the teacher's employer, and so could not be liable to her under Section 703, the Attorney General could sue it under Section 707(a) over a statute that allegedly required school boards to violate Title VII. *See Bd. of Educ.*, 911 F.2d at 891-92. But the claim failed because the court concluded that Title VII does not require public schools to allow teachers

---

[6] The Commission likewise explains that Section 707(a)'s use of "person" permits suits against non-employers, citing *Board of Education* and *Original Knights*. Opinion Letter, pt. I n.7.

[7] *Doherty* read *Original Knights* to recognize Section 707 resistance without employer discrimination or adverse action. 126 F. Supp. 3d 1305, 1311 (S.D. Fla. 2015). But *Original Knights* emphasized the Klan's pressure on employers who might otherwise comply with Title VII. 250 F. Supp. 330, 356 (E.D. La. 1965); *see also id.* at 344. That supports the narrower theory that Section 707 reaches non-employers whose conduct causes employers to violate Section 703, not a freestanding resistance claim.

to wear religious garb, which would impose an "undue hardship" under 42 U.S.C. § 2000e(j). *Id.* at 892-893 & n.9. Section 707(a) thus reaches a non-employer whose conduct causes an employer to violate Title VII; "resistance" describes that role, not a separate substantive prohibition.

Neither tool helps Count 3. Unless there is an underlying violation of Section 703 or 704, the ground covered by Counts 1 and 2, the Attorney General cannot use Section 707(a)'s power to aggregate such violations, or its power to extend the scope of liability to other types of defendants. Therefore, Section 707(a)'s reach to persons that Sections 703 and 704 do not bind directly adds nothing to the United States' case.

**D. Count 3 Pleads a Standard that Section 707(a) Does Not Contain.**

Count 3 invokes the same Title VII rights as Counts 1 and 2 but asserts that Section 707(a) reaches resistance "not limited to" Title VII's enumerated unlawful employment practices, including Section 703(a). Am. Compl. ¶ 78. It then describes the additional conduct as "barriers" that "deter[]" employment decisions, without identifying a separate statutory prohibition. *Id.* ¶¶ 79–81. Count 3 thus alleges either the Section 703 violations pleaded in Counts 1 and 2 or conduct beyond Section 703 for which it supplies no standard.

Neither formulation states a claim of its own. Count 2 already challenges the Composite Policy under Section 703(a)(2), which reaches practices that "limit, segregate, or classify" applicants or employees in a way that "would deprive or tend to deprive" them of employment opportunities because of race or sex. 42 U.S.C. § 2000e-2(a)(2). If the alleged "barriers" limit or classify employees in a way that deprives them of opportunities

because of race or sex, Section 703(a)(2) reaches them, and Count 2 already asserts that claim. If they do not, nothing in Title VII reaches them, and Section 707(a) supplies no standard for imposing liability. Either way, Count 3 fails. Section 707(a) broadens the government's enforcement reach; it leaves Title VII's substantive boundaries unchanged.

## II. COUNT 4 IDENTIFIES NO INDEPENDENT PREEMPTION CONFLICT OR BASIS FOR RELIEF.

Count 4 pleads preemption, but it identifies no violation and no source of enforcement authority beyond those already before the Court. Paragraph 86 invokes Section 708, which preserves state law except for laws that "purport to require or permit the doing of any act which would be an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-7. Paragraph 87 identifies the unlawful employment practices at issue as those "described in Counts 1 and 2." Am. Compl. ¶ 87. Paragraph 88 adds only that the Composite Policy is preempted "to the extent that it otherwise conflicts with Title VII." *Id.* ¶ 88. Count 4 incorporates every preceding allegation, *id.* ¶ 85, and seeks the same declaration and injunction, *id.* at 23.

Count 4 fails as pleaded for three reasons. Section 708 supplies no independent substantive standard of liability; paragraph 87 ties preemption to the Section 703 violations alleged in Counts 1 and 2; and paragraph 88 identifies no separate conflict or basis for relief. Minnesota does not ask the Court to decide whether Section 708 could matter under a different theory or in another posture.

### A. Section 708 Does Not Contain a Substantive Employment Prohibition.

Section 708 is a saving clause phrased in the negative. It provides that nothing in Title VII relieves any person from liability under state law, "other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter." 42 U.S.C. § 2000e-7. Its exception therefore asks whether state law requires or permits an act that Title VII independently makes unlawful. *See Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 292 (1987) (state statute not preempted because it does not "require the doing of an act which is unlawful under Title VII"). Section 708 does not define unlawful conduct or supply a second substantive standard for liability.

Count 4 makes that dependence explicit. Am. Compl. ¶ 87 ("As described in Counts 1 and 2,"). Thus, whatever procedural vehicle may be available to seek preemption relief, the predicate for the express-preemption theory pleaded here is the same predicate alleged in Counts 1 and 2: an unlawful employment practice under Title VII.

The United States "brings this action under Section 707," Am. Compl. ¶ 10, but Count 4 identifies no substantive Title VII violation independent of Counts 1 and 2. A preemption label does not alter the underlying showing those counts require.

### B. Paragraph 87 Depends on the Section 703 Allegations in Counts 1 and 2.

The United States affirmatively pleads Count 4 as dependent on Counts 1 and 2. Count 4 identifies one predicate for Section 708's exception: "[a]s described in Counts 1 and 2," the Composite Policy "requires State agencies to engage in unlawful employment

practices under Title VII." Am. Compl. ¶ 87. But it identifies no separate conflict between Title VII and the Composite Policy. *Id.* ¶¶ 85–88.

If Counts 1 and 2 establish that the Composite Policy requires an unlawful employment practice, paragraph 87 adds no independent basis for judgment because the United States may obtain the same relief under those counts. *See Bd. of Educ.*, 911 F.2d at 892 (a court in a Section 707 action should enjoin a State "from enforcing" a statute that "in itself represents a policy in conflict with Title VII"). If Counts 1 and 2 do not establish an unlawful employment practice, paragraph 87 fails by its own terms. Either way, Section 708 supplies no independent basis for liability or relief.

Even if the United States treats paragraph 87 as a separate claim, it should be dismissed as duplicative of Counts 1 and 2. Count 4 seeks nothing those counts cannot supply. If the Composite Policy requires an unlawful employment practice, Section 707(a) itself authorizes an injunction "against continuation of the discriminatory practice," Teamsters, 431 U.S. at 361, including an order enjoining the State "from enforcing" the offending statute, *Bd. of Educ.*, 911 F.2d at 892. And the declaration Count 4 adds is discretionary. 28 U.S.C. § 2201(a) (court "may declare"); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (Act "confers a discretion on the courts rather than an absolute right upon the litigant") (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Courts in this District accordingly dismiss declaratory counts that seek relief a substantive count already supplies. *See, e.g., Finnegan v. Suntrust Mortg.*, 140 F. Supp. 3d 819, 842 (D. Minn. 2015). Count 4 depends on the same alleged Title VII violations,

challenges the same Composite Policy, and seeks the same relief. It adds nothing for the Court to adjudicate.

### C. Paragraph 88 Identifies No Separate Conflict.

Count 4 also alleges that the Composite Policy is preempted "to the extent that it otherwise conflicts with Title VII." Am. Compl. ¶ 88. The only provision that catchall allegation could be read to invoke is Section 1104, the Civil Rights Act's general anti-preemption provision. Section 1104 bars construing any title of the Act to invalidate state law unless the law conflicts with the Act's purposes or provisions. 42 U.S.C. § 2000h-4. *Guerra* produced no majority holding on whether Section 1104 governs Title VII specifically: a four-Justice plurality read it to constrain Title VII preemption, Justice Stevens reserved the question, and Justice Scalia relied on Section 708 alone. 479 U.S. at 280–84, 292–93 n.1, 295–96.

The Court need not resolve that question because Paragraph 88 never identifies how the Composite Policy might conflict with Title VII at all. Its incorporated allegations identify no conflict beyond the Section 703 provisions Counts 1 and 2 invoke. If the United States means the Composite Policy requires an unlawful employment practice, Paragraph 88 restates Section 708's exception and Counts 1 and 2. If it means some other conflict with Title VII's purposes or provisions, it identifies none.

## CONCLUSION

As pleaded, Count 3 identifies no substantive Title VII right or employment prohibition distinct from the Section 703 theories in Counts 1 and 2, and Count 4 identifies

no separate conflict or basis for relief. For these reasons, the State of Minnesota asks the Court to grant its motion under Rule 12(b)(6) and dismiss Counts 3 and 4 of the Amended Complaint (Dkt. 55) with prejudice.

Date: October 9, 2026

KEITH ELLISON
Attorney General
State of Minnesota

s/ Nick Pladson
NICK PLADSON
Assistant Attorney General
Atty. Reg. No. 0388148

JEFF TIMMERMAN
Assistant Attorney General
Atty. Reg. No. 0352561

PETER J. FARRELL
Acting Solicitor General
Atty. Reg. No. 0393071

MADELEINE DEMEULES
Assistant Attorney General
Atty. Reg. No. 0402648

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 300-7083 (Voice)
(651) 296-7438 (Fax)

Nick.Pladson@ag.state.mn.us
Jeffrey.Timmerman@ag.state.mn.us
Peter.Farrell@ag.state.mn.us
Madeleine.DeMeules@ag.state.mn.us

ATTORNEYS FOR DEFENDANT